## 56888. McCLELLAND v. WESTVIEW CEMETERY, INC.

WEBB, Judge.

In March of 1943 McClelland's father, now deceased, entered into a contract to purchase an eight grave burial lot in Westview Cemetery for the price of $1,200. McClelland was with his father at the time the lot was purchased and during all negotiations and discussions. The lot was bordered on three sides with permanent shrubbery, accentuated by a fully planted and blooming flower bed, holly bushes and statuary. None of the plantings was on the land purchased.

At the time the lot was shown and under discussion it was represented to McClelland and his father that because of its special features and distinctive landscaping design it was one of the two most expensive lots in the cemetery; that the format, condition and design of the lot was to be and remain as then exhibited; and that the flower bed was to continue to be stocked and planted with seasonal flowers, a perpetual care fund being in existence for this purpose. On the strength of these representations an installment contract of purchase was signed by McClelland's father. After making the required payments of $20 a month for five years, a warranty deed dated February 19, 1948, was executed and delivered jointly to McClelland and his father.

From 1943 until 1975 or 1976, the condition of the lot with the distinguishing features described remained the same as at the time of purchase. At this time the shrubbery around the lot was killed by a winter freeze, and all improvements were removed and the area was

sodded over with Bermuda grass just as every other lot in the Memorial Park area. After a failure to resolve the situation to McClelland's satisfaction, he brought suit for fraud and deceit seeking actual and punitive damages. Westview's motion for directed verdict at the close of the evidence was granted and McClelland appeals. We affirm.

1. The contract entered into by McClelland's father in his presence contains the following pertinent provisions:

"The seller agrees to improve and beautify the graves or lots named above for cemetery purposes according to the plans and designs now in possession of the seller, reserving the right to alter, amend, and modify such plans in acccordance with its own judgment and to proceed with such improvements only as funds for so doing shall be available from sale of lots in the Cemetery.

"It is hereby agreed and understood by and between the parties hereto that said graves or lots are bought subject to the rules and regulations of the seller and the buyer expressly agrees to be bound by all such rules and all amendments and new rules hereafter adopted. . ."

The contract further provides in bold print:

"It is agreed that this contract contains complete understanding between the seller and the buyer and no agent or representative of the seller has any authority to make any statements, representations or agreements modifying, adding to or changing the terms or conditions set forth, and no such modifications, changes or additions shall be binding upon the seller or in anywise affect the validity of this agreement. This agreement shall be binding upon the heirs, executors, administrators, and assigns of the parties hereto."

"When parties have reduced their contracts to writing, ordinarily the rights and duties of the parties must be found in the written instrument." *West View Corp. v. Alston,* 208 Ga. 122, 127 (65 SE2d 406) (1951). Here, as in *Alston,* "there is nothing in the record to remove this case from the general rule of law above stated" and *Alston* is controlling. See also *Goodwin v. Candace, Inc.,* 92 Ga. App. 438 (88 SE2d 723) (1955).

McClelland, as his father's heir, is bound by the terms of the contract. Not only did Westview specifically

reserve the right to "alter, amend and modify" improvements, McClelland and his father, both of whom were attorneys, "agreed and understood" that the lots were "bought subject to [Westview's] rules and regulations. . . and all amendments and new rules hereafter adopted. . .," and that Westview was not bound by the representations of its agents. In 1948 when the McClellands completed payment on the lot they received a warranty deed and a copy of the rules and regulations then in effect, which further outlined the rights and obligations of the parties to this same effect.[1]

---

[1]Some of the more pertinent provisions are as follows:

"42. Statement of Sales Agent. The instrument conveying to lot owner the right of interment, and the rules and regulations of this Corporation, now in force or which may hereafter be adopted, including modifications or amendments thereof, shall be the sole agreement between the Corporation and the lot owner. The statement of any sales agent shall in no way bind the Corporation.

"11. Work to be done by the Corporation. All grading, landscape work and improvements of any kind, and all care on lots, shall be done, and all trees and shrubs and herbage of any kind shall be planted, trimmed, cut or removed, and all openings and closings of lots, and all interments, disinterments and removals shall be made only by the Corporation.

"Permanent planting of grasses, shrubs, flowers, etc., is made by the Corporation and further planting may be permitted only at the discretion of the Superintendent. The whole park is landscaped, and to keep it uniform and beautiful, it is necessary that all plantings shall be under the Corporation officials. . .

"The Corporation retains control and the supervision of all lots which are sold; and the Corporation retains the right to have its Superintendent enter upon any lot and prohibit, modify or remove any structure, object, improvement or adornment on such lot, which may have been placed thereon in violation of the rule; or which may be considered objectionable or injurious to the lot,

At the trial it was established without dispute that the shrubbery was removed only because it was killed by extreme weather, and that the perpetual care fund used to maintain the cemetery property generated interest income of only $55,000 a year, whereas more than three times that much was needed for employees, equipment and maintenance expenses. Even so, McClelland insists that Westview is under the duty to maintain the lot in the same condition as it was when he purchased it, regardless of the cost.

---

adjoining lots or, to the park in general. . .

"14. Right to Replan, Regrade and Use Property. The right to enlarge, reduce, replan or change the boundaries or grading of the Cemetery, or of the Section or Sections from time to time, including the right to modify and change the locations of or remove or regrade roads, drives and walks, or any part thereof, is hereby expressly reserved. The right to lay, maintain and operate, or alter, or change pipe lines or gutters for sprinkling systems, drainage lakes, etc., is also expressly reserved as well as the right to use Cemetery property not sold to individual lot owners. . .

"32. Provisions Relating to Perpetual Care. The term 'Perpetual Care' used in reference to lots, shall be held to mean the cutting of grass upon said lots at reasonable intervals, the raking and cleaning of lots, the pruning of shrubs and trees that may be placed by the Corporation, the general preservation of the grounds, walks, roadways, boundaries and structures, to the end that said grounds shall remain and be reasonably cared for as cemetery grounds forever.

"(a) Perpetual Care Exceptions. The term 'perpetual care' shall in no case be construed as meaning the maintenance, repair or replacement of any memorial tablets or memorial placed upon lots; nor the planting of flowers or ornamental plants;

"(b) Expenditure Limited to Income. Perpetual care whether applied to lots, graves, mausoleum or to any space within the confines of the Cemetery, shall be limited absolutely to the income received from the investment of the perpetual care fund . . ."

This argument, however, was rejected in *Alston,*[2] the Supreme Court holding that it would "place upon [Westview] a much larger obligation than the contract between the parties provides for, and very largely to strip the management of the cemetery of any discretion in its management and operation. Courts, of course, can not place upon either party to a contract greater obligations than the contract itself does. In the very nature of things, the management of a cemetery must be allowed some discretion in its operation, and so long as this discretion is exercised in good faith, and does not violate any of the terms of the contract between the parties, courts have no right or authority to interfere." *West View Corp. v. Alston,* 208 Ga. 122, 128, supra. Thus, "The question of liability for removal of the flowers and shrubs is clearly precluded by the Supreme Court's holding." *Goodwin v. Candace, Inc.,* 92 Ga. App. 438, 440, supra.

2. Nor is recovery available in tort for fraud and deceit. " 'In order to show fraud and misrepresentation in the procurement of the contract as a defense to an action on the contract, it is not sufficient to show that false representations were made, which were known to be false and which were made with the intention to deceive. It must also be shown that the defendant exercised due care to discover the fraud and that he relied upon the false representations to his injury.' *Dr. Pepper Finance Corp. v. Cooper,* 215 Ga. 598, 601 (112 SE2d 585). 'It is well settled that fraud cannot form the basis of an action or a defense thereto, in the absence of any trust or confidential relationship, if it appears that the person relying on the fraud as a basis for the action or in defense thereto had equal and ample opportunity to prevent the happening of the occurrence, and made it possible through a failure to exercise proper diligence.' *Millender v. Looper,* 82 Ga. App..563, 569 (61 SE2d 573). Also, see *Martin v. North Ga. Lumber Co.,* 72 Ga. App. 778, 781 (35 SE2d 270). A defendant seeking damages by way of a counterclaim in the nature of a tort claim for fraud and deceit must show (1) that the plaintiff (or someone acting for the plaintiff) made the representations; (2) that at the time they were

[2]Where McClelland also represented the plaintiffs.

known to be false (or what the law regards as the equivalent of knowledge); (3) the representations were for the intention and purpose of deceiving the defendant; (4) that the defendant relied on the representations; and (5) that the defendant sustained a loss or damage as the proximate result of the representations. See *Gem City Motors v. Minton,* 109 Ga. App. 842 (137 SE2d 522)." *Am. Food Services, Inc. v. Goldsmith,* 121 Ga. App. 686, 687 (175 SE2d 57) (1970).

McClelland submitted no evidence to support a finding that any statements which were allegedly made by Westview's agents were known to be false or that they were made for the intention and purpose of deceiving him or his father. "Representations under the general head of 'dealer's talk' are regarded as mere commendations, 'puffing,' or expressions of opinion, and do not, though untrue, constitute false representations which will avoid a contract. *Williams v. Fouche,* 164 Ga. 311 (5) (138 SE 580). The representations to support a claim must relate to an existing fact and not a future event, unless it be an event which the party making the representation knows will never occur. Mere broken promises, unfulfilled predictions, and erroneous conjectures do not meet this test. [Cits.]." *Am. Food Services, Inc. v. Goldsmith,* 121 Ga. App. 686, 688, supra. See also *Ga. Mobile Home Development Corp. v. Kuter,* 119 Ga. App. 781 (168 SE2d 858) (1969); *Slaten v. College Park Cemetery Co.,* 185 Ga. 27 (193 SE 872) (1937).

Moreover, the McClellands had equal and ample opportunity to prevent the happening of the occurrence. Had the parties expressly agreed to maintain the shrubbery, flowers and statuary on the cemetery property in perpetuity, such an agreement could have been specifically included in the warranty deed. Therefore, even construing the evidence presented most favorably to McClelland, a finding and direction of a verdict in Westview's favor was demanded. Clearly direction of a verdict in McClelland's favor on the question of liability was not authorized, there being no proof as a matter of law.

*Judgment affirmed. McMurray, J., concurs. Quillian, P. J., concurs in the judgment only.*

ARGUED NOVEMBER 7, 1978 — DECIDED NOVEMBER 28, 1978 — REHEARING DENIED DECEMBER 14, 1978 — 

*J. Ralph McClelland, Jr., J. Ralph McClelland, III,* for appellant.
*Freeman & Hawkins, Alan F. Herman,* for appellee.