Paul F. GIBSON, Plaintiff,

v.

HOME FOLKS MOBILE HOME PLAZA, INC., Defendant.

Civ. A. No. CV181–002.

United States District Court, S. D. Georgia, Augusta Division.

March 10, 1982.

Douglas D. Batchelor, Jr., Augusta, Ga., for plaintiff.

C. B. Thurmond, Jr., Augusta, Ga., for defendant.

## ORDER

BOWEN, District Judge.

Prior to September 17, 1976, defendant Home Folks Mobile Home Plaza, Inc. [Home Folks] owned fifteen and one-half acres of land in Richmond County, Georgia, upon which it operated a mobile home park. The business was essentially twofold: (1) leasing to tenants some seventeen mobile homes owned by defendant and located in the park, and (2) leasing spaces in the park on which tenants could place their own mobile homes. The total 116 park spaces for mobile homes were equipped with connections for water, electric, natural gas and sewer services.[1] Sewage disposal was provided by a septic system in the park and water service was provided by park wells; natural gas was sold by Home Folks to the tenants in the park.

Sometime in 1975, Home Folks listed the land and business, constituting the mobile home park, for sale with a real estate broker. Plaintiff, a New Jersey resident interested in an investment property, saw an advertisement for the park in December,

---

1. The precise number of total park spaces is in dispute. Defendant contends that 119 spaces were available for rent, whereas plaintiff asserts that the figure was 116. For purposes of deciding defendant's motion for summary judgment, the Court will adopt plaintiff's figure.

1975, and subsequently in the spring and summer of 1976, entered into discussions with Mr. W. S. May, Sr., president of Home Folks, concerning the possible purchase of the park.

Pursuant to these discussions, plaintiff first visited the park in May, 1976, at which time plaintiff counted ninety-two spaces occupied, and thus a concomitant vacancy of twenty-four spaces. During this visit also, various statements were made by Mr. May concerning the mobile home park, its facilities, and the conditions of its business. While the exact content of these statements is in dispute, plaintiff, by writing in his own hand dated May 18 and 19, 1976, purports to show a series of questions about the property and answers thereto by Mr. May. Of relevance to this case, the question and answers purport to show that the following representations were made by Mr. May: (1) the water and sewage systems were in good condition and no major expenditures could be expected in the short term; (2) the profit on natural gas sold to tenants was 40%; and (3) the normal vacancy was 5% with fluctuations. Separate from these questions and answers transcribed by plaintiff, Mr. May gave plaintiff an income statement for the park prepared by an accountant showing a gross rental income of $55,776.42 and a net rental income of $38,220.80 for an eight-month period, January 1, 1975 through August 31, 1975. The income statement did not provide a separate accounting for income derived from the sale of natural gas as opposed to rental income.

Following receipt of this income statement, plaintiff, by letter to Mr. May dated June 2, 1976, projected a twelve-month gross income of $83,664.63 and a net profit before debt service in the amount of $57,331.20. In his letter, plaintiff asked Mr. May if this twelve-month figure, derived from the income statement, was accurate for the last three years of Home Folks' business. By letter dated June 16, 1976, Mr. May responded in part as follows: "The figures you gave on your letter are very accurate. Our business is steadily improving we have at this time five vacant spaces and have two different customers that want to park four mobile homes each."

Plaintiff again visited the park in July, 1976, and determined that ninety-five of the park spaces were occupied. During this visit, as well as his prior inspection, plaintiff visually ascertained no problems with the sewage and water systems. Furthermore, during his visits, plaintiff never asked to inspect the books and records of Home Folks, and there is no indication that the records were in any way concealed; nor is there any indication that plaintiff was prevented from inspecting any part of the premises.

After these negotiations and visits to the park, plaintiff decided to make the purchase. The sale was consummated on September 17, 1976, at which time the parties executed a sales contract, promissory note and security deed and a sales closing statement. Additionally, a schedule was prepared by the secretary-treasurer of Home Folks, Louise M. May, listing the park's present tenants and prorating the amounts due from those tenants for the month of September between the parties. Both parties at closing were represented by counsel.

The sales contract provided for a total purchase price of $275,000 paid as follows: a down payment of $60,000 and a promissory note for the balance, secured by certain personal property in the park. Paragraph 15 of the sales contract contained the following merger and disclaimer clause: "This writing contains the full, final, and exclusive statement of the contract of Seller and Buyer. No representations or statements have been made by Seller concerning collateral except as herein stated, and no warranty, express or implied, by Seller arises apart from this writing."

The schedule prepared by Mrs. May, at the time of closing, consisted of three pages. Pages one and two provided a list of sixty-one tenants, identified by parkspace number, who had prepaid their amounts due to Home Folks and for which plaintiff was due a credit. The total buyer credit came to $1,508.69. Page three listed twenty-eight tenants whose amounts due

would be collected by plaintiff-buyer and for which defendant-seller was due a credit for the days prior to September 17, 1976. The total credit due defendant, including "cokes on hand" was $957.66. The balance of $551.03 (i.e., $1,508.69 minus $957.66) was paid to plaintiff by check on the date of closing, and was subsequently negotiated by plaintiff on September 21, 1976. The "amounts due" from the tenants was a lump sum figure, not separated into rental payments and natural gas payments; the total number of park spaces occupied, as reflected by the schedules, was eighty-nine.

Subsequent to the above-described proration of amounts due from tenants, plaintiff undertook a reaudit of Mrs. May's figures and found an error in several of the credits. By letter dated October 6, 1976, plaintiff informed Mr. May of the errors. Following receipt of this letter, Home Folks acknowledged the error and made an appropriate payment to plaintiff.

After plaintiff purchased the park, he made certain expenditures on the water and septic systems. In the first six months of his ownership, plaintiff spent $3,899.00 on repairing the wells and $1,485.00 on the septic system. According to plaintiff's resident manager, who had previously been employed by Mr. May, the water and septic systems in the park had presented recurring problems prior to September 17, 1976. Ultimately, when plaintiff sold the park some three years after the purchase, he expended $7,531.00 on the water wells and $8,125.00 on the septic system.

In the first year of plaintiff's operation of the park, the number of spaces occupied never exceeded ninety-eight. Plaintiff raised the rent, as well as the charges for natural gas, and made a gross income for the year in the amount of $69,764.00. Since plaintiff's operating expenses exceeded $45,572.00, his net income before debt service was approximately $24,192.00. After payment of his debt to Mr. May, in the sum of $27,244.00, plaintiff was operating at a deficit. Plaintiff first notified Mr. May of his financial problems with the park in April, 1977, and again in May, 1977.

Plaintiff filed the present case on January 5, 1981, some four years and four months after the date of the sale closing on September 17, 1976. The complaint alleges that Mr. May, on behalf of defendant Home Folks, made certain false, untrue and fraudulent statements to plaintiff for the purpose of inducing plaintiff to purchase the mobile home park. Specifically, the alleged fraudulent representations include the following: (1) the eight month income statement and Mr. May's assurance that the twelve month income projection by plaintiff was accurate; (2) statements that the property had three water wells in good operating condition; (3) statement that an approximate forty percent profit was realized on the sale of natural gas to the park's tenants; (4) statement that the sewage disposal system was in good condition and functioned satisfactorily; and (5) statement that the number of vacancies in the park was as low as five in June, 1976. Plaintiff seeks $100,000.00 actual damages and $100,-000.00 punitive damages.

The case is presently before the Court on defendant's motion for summary judgment. The bases for the motion appear to be threefold: (1) plaintiff, in the exercise of due diligence, should have discovered the verity of any alleged representations made by defendant; (2) the action is barred by the applicable statute of limitations; and (3) the merger and disclaimer clause in the sales contract precludes plaintiff's action predicated on alleged prior fraudulent representations.

In resolving whether to grant defendant's motion, the bounds of the Court's discretion are well established. Summary judgment may be granted only " 'if *everything* in the record—pleadings, depositions, interrogatories, affidavits, etc.—demonstrates that no genuine issue of material fact exists'." *Erco Industries Ltd. v. Seaboard Coast Line R. Co.*, 644 F.2d 424, 428 (5th Cir. 1981) (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980) (emphasis in original)); *see Cubbage v. Averett*, 626 F.2d 1307, 1308 (5th Cir. 1980). The burden of establishing the absence of a genuine

issue as to material facts rests with the movant. *Everhart v. Drake Management, Inc.*, 627 F.2d 686, 690 (5th Cir. 1980). This burden is not lightly met since the district court must view all evidence in the light most favorable to the non-movant as well as resolve all reasonable doubts raised by the evidence against the moving party. *See Casey Enterprises v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981); *Erco Industries Ltd. v. Seaboard Coast Line R. Co.*, 644 F.2d at 428. In sum, "[s]ummary judgment may be granted only when the moving party has established his right to judgment with such clarity that the non-moving party cannot recover . . . under any discernible circumstance." *Everhart v. Drake Management, Inc.*, 627 F.2d 686, 690 (5th Cir. 1980). *See generally Heller v. Namer*, 666 F.2d 905 at 912, n. 14 (5th Cir. 1982).

■ As gleaned from the complaint, plaintiff is seeking actual damages through an action at law in tort for fraud and deceit in the procurement of the sales contract, which fraud consisted of certain prior representations, both oral and written, allegedly made by defendant. *See* Ga. Code Ann. 105–302; *Tuttle v. Stovall*, 134 Ga. 325, 329, 67 S.E. 806 (1910); *Central Chevrolet, Inc. v. Campbell*, 129 Ga.App. 30, 198 S.E.2d 362 (1973); *Spindel v. Kirsch*, 114 Ga.App. 520 (1966); 109 Ga.App. 842 (1964); *Commercial City Bank v. Mitchell*, 25 Ga.App. 837, 105 S.E. 57 (1920). *See also Rodrigue v. Mendenhall*, 145 Ga.App. 666, 668, 244 S.E.2d 598 (1978) ("[T]he measure of damages in an action for fraud and deceit is the difference between the actual value of the property at the time of purchase and what the value would have been if it had been as represented."). The elements of this cause of action, which plaintiff has alleged with the requisite specificity, Fed.R.Civ.P. 9(b), are: "(1) false representation made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; (5) damage to the plaintiff." *City Dodge v. Gardner*, 232 Ga. 766, 769, 208 S.E.2d 794 (1974). Central to defendant's motion for summary

judgment is the applicability *vel non* to the facts in this case of the fourth of these elements—"justifiable reliance by the plaintiff."

■ As a general rule, a defrauded party cannot state a claim of justifiable reliance upon the false representations of another, when such person, in the exercise of ordinary diligence, could have discovered the falsity of the representations before acting thereon. *Barrett v. Independent Order of Foresters*, 625 F.2d 73, 74 (5th Cir. 1980) (citing *Cole v. Cates*, 113 Ga.App. 540, 149 S.E.2d 165 (1966)); *see Charter Medical Co. v. Ware Manor*, 159 Ga.App. 378, 380, 283 S.E.2d 330 (1981); *McClelland v. Westview Cemetery, Inc.*, 148 Ga.App. 447, 451, 251 S.E.2d 351 (1978); *Scott v. Fulton National Bank of Atlanta*, 92 Ga.App. 741, 744, 89 S.E.2d 892 (1955). The scope of the defrauded party's duty to discover, as defined by the "ordinary," "reasonable" or "due," diligence standard, does not go so far as to require the exhaustion of all available means to ascertain the truth of the representations. *Elliott v. Marshall*, 179 Ga. 639, 640, 176 S.E. 770 (1934); *Rodrigue v. Mendenhall*, 145 Ga.App. at 668, 244 S.E.2d 598. Furthermore, as recognized by Georgia appellate courts, questions of whether the defrauded party "could have protected himself by the exercise of proper diligence are, except in plain and indisputable cases, questions for the jury." *Brown v. Techdata Corp.*, 238 Ga. 622, 625, 234 S.E.2d 787 (1977); *see Gaines v. Watts*, 224 Ga. 321, 323, 161 S.E.2d 830 (1968); *Braselton Brothers, Inc. v. Better Maid Dairy Products, Inc.*, 222 Ga. 472, 475, 150 S.E.2d 620 (1966).

■ In an entirely distinct context, a "reasonable diligence" standard is also imposed upon a party, whatever his cause of action, seeking to invoke section 3–807 in order to toll an applicable statute of limitations. *See Brinsfield v. Robbins*, 183 Ga. 258, 270, 188 S.E.2d 7 (1936); *Webb v. Lewis*, 133 Ga.App. 18, 21, 209 S.E.2d 712 (1974); *Bates v. Metropolitan Transit System, Inc.*, 128 Ga.App. 720, 721, 197 S.E.2d 781 (1973); *Middleton v. Pruden*, 57 Ga.App. 555, 559,

196 S.E. 259 (1938). Section 3–807 provides:

> If the defendant, or those under whom he claims, shall have been guilty of a fraud by which the plaintiff shall have been debarred or deterred from his action, the period of limitation shall run from the time of the discovery of the fraud.

As construed by the Georgia courts, only actual fraud, not constructive fraud, tolls the statute of limitations, and, when plaintiff's cause of action is also bottomed on actual fraud, the following principles apply:

> In such cases the statute of limitations is tolled until the fraud is discovered or by reasonable diligence should have been discovered. No other independent fraudulent act is required to toll the statute. Silence is treated as a continuation of the original actual fraud .... Failure to exercise reasonable diligence to discover the fraud may be excused where a relationship of trust and confidence exists between the parties.

*Shipman v. Horizon Corporation*, 245 Ga. 808, 808, 267 S.E.2d 244 (1980). Simply stated, where the gravamen of the complaint is actual fraud (e.g., an action in tort for fraud and deceit), the effect of section 3–807 is that the statute of limitations for plaintiff's action does not begin to run until the fraud is discovered or, absent a relationship of trust and confidence between the parties, should have been discovered in the exercise of reasonable diligence.[2]

On the basis of the foregoing discussion, it is apparent that, in adjudicating a claim for fraud and deceit, the applicability of a "reasonable diligence" standard may arise in two contexts and present two separate inquiries. One issue goes to the merits of plaintiff's claim—that is, whether plaintiff justifiably relied upon the false representations, or whether, in the exercise of reasonable diligence, he should have discovered the falsity of the representations before acting on them. If, through reasonable diligence, plaintiff should have discovered the fraud before reliance, then he may not prove the fourth element of his cause of action for fraud and deceit. A second inquiry bears upon the viability of plaintiff's claim—that is, whether plaintiff, even assuming an actionable claim for fraud and deceit, is time barred from prosecuting his claim. If, in the exercise of reasonable diligence, plaintiff should have discovered the fraud giving rise to his claim at a point in time earlier than alleged in his complaint, then, with the synchronous running of the statute of limitations from such prior time and resultant earlier expiration of the statute, plaintiff's suit may not be timely filed.

In this action, although somewhat ill-defined in the briefs, defendant apparently raises both aspects of the reasonable diligence issue in support of its motion for summary judgment. Thus, the attendant task before the Court is to determine, based

---

2. There is some confusion in the reported cases of the Georgia appellate courts concerning the applicability of section 3–807 when some form of fraud also gave rise to plaintiff's cause of action. *See Middleton v. Pruden*, 57 Ga.App. 555, 557–558, 196 S.E. 259 (1938). Since section 3–807 requires actual fraud, the point of debate was whether such fraud to toll the statute of limitations must be independent of the fraud which gave rise to the cause of action.

The Georgia Supreme Court seemingly settled the issue in 1980, holding that a separate and independent fraud is required under section 3–807 *only* where plaintiff's cause of action is for other than actual fraud. *Shipman v. Horizon Corporation*, 245 Ga. 808, 808–809, 267 S.E.2d 244 (1980). Thus, in cases where the gravamen of plaintiff's claim is constructive fraud, negligence or breach of contract, etc.,:

there must be a separate independent actual fraud involving moral turpitude which debars and deters the plaintiff from bringing his action. However, in these circumstances, silence concerning the underlying action cannot be a continuation of an original actual fraud because there is none. Thus, in this type case we find the statement that "mere silence" is not sufficient to toll the statute unless there is a duty to make a disclosure because of a relationship of trust and confidence between the parties. Again, the statute is tolled only until the fraud is discovered or should have been discovered, unless excused.

*Id.* at 809, 267 S.E.2d 244; *see Jim Walter Corp. v. Ward*, 245 Ga. 355, 356, 357, 265 S.E.2d 7 (1980); *Comerford v. Hurley*, 246 Ga. 501, 502, 271 S.E.2d 782 (1980).

upon the pleadings, affidavits, exhibits and depositions on file, whether as a matter of law: (1) plaintiff in the exercise of reasonable diligence, should have discovered the falsity of any representations before relying thereon; and (2) plaintiff, in the exercise of ordinary diligence, should have discovered the alleged fraud upon which his action is based at a time prior to that alleged in the complaint.

*Due diligence before relying on representations*

As noted by the Georgia Court of Appeals, fraud in the sale of property may arise in three situations:

First is the situation where the seller by words or acts positively misrepresents a fact; in other words, the seller tells a lie .... Secondly, there exists a situation of active concealment, where the seller does not discuss the defect in issue, but takes steps to prevent its discovery by the prospective buyer .... Thirdly, there is the situation where the seller knows of a material defect. He does not attempt to hide the problem for the prospective buyer and he does not prevaricate. He simply keeps his mouth shut.

*Wilhite v. Mays*, 140 Ga.App. 816, 817, 232 S.E.2d 141 (1976), *aff'd*, 239 Ga. 31, 235 S.E.2d 532 (1977); *see Johnson v. Sherrer*, 197 Ga. 392, 400, 29 S.E.2d 581 (1944) ("Fraud is exceedingly subtle in its nature."); *King v. Towns*, 102 Ga.App. 895, 900, 118 S.E.2d 121 (1960). Plaintiff's allegations of fraud fall into the first category —"where the seller by words or acts positively misrepresents a fact." To reiterate, plaintiff avers the following positive misrepresentations made by defendant: (1) that plaintiff's yearly income figures derived from defendant's eight month income statement were accurate for the last three years of the park's operation; (2) that the park had only five vacant spaces as of June 16, 1976; (3) that the park had three water wells, with pumps and water distribution system in good working order; (4) that a forty percent profit was made on the sale of natural gas to tenants; and (5) that the park septic system was in good condition and functioned satisfactorily.

Such positive misrepresentations by words or acts are clearly actionable unless it appears as a matter of law that plaintiff was not justified in relying on them in the exercise of common prudence and diligence. *See Daugert v. Holland Furnace Co.*, 107 Ga.App. 566, 569, 130 S.E.2d 763 (1963). A lack of diligence may appear as a matter of law where plaintiff blindly relies upon the representations of another without rhyme or reason. *See King v. Towns*, 102 Ga.App. at 901, 118 S.E.2d 121. "Blind reliance exists where 'it cannot be said that the purchase originated in fraud so much as in the carelessness of the purchaser to exercise ordinary care for his own interest'." *Adkins v. Lee*, 127 Ga.App. 261, 264, 193 S.E.2d 252 (1972) (quoting *Feingold v. McDonald Mortgage Co.*, 166 Ga. 838, 840, 145 S.E. 90 (1928)). *See e.g., Zeeman v. Black*, 156 Ga.App. 82, 88, 273 S.E.2d 910 (1980) (Plaintiff "failed to exercise any diligence to ascertain the acreage and blindly relied upon the representation as to this matter."). In a similar manner, a failure of due diligence by plaintiff may exist as a matter of law, where the alleged fraud consisted of defendant's silence on a particular matter and plaintiff could have discovered the existence of the unspoken fact by simple inspection. *Westbrook v. Beusse*, 79 Ga.App. 654, 54 S.E.2d 693 (1949) (silence as to fact that timber on land had been cut not actionable fraud—plaintiff could have discovered fact by inspection of land). *Cf. Kirven v. Blackett*, 308 Ga. 178, 65 S.E.2d 791 (1951) (dismissing petition on grounds that defendant's silence did not amount to actual fraud and not on grounds that plaintiff lacked due diligence).

Allegations of fraud also may not be actionable if it appears as a matter of law that the person relying on the fraud had an equal and ample opportunity to prevent the happening of the occurrence causing injury. *McClelland v. Westview Cemetery*, 148 Ga.App. 447, 251 S.E.2d 351 (1978) (plaintiff had equal and ample opportunity to maintain shrubbery bordering burial plot). Finally, plaintiff's lack of dili-

gence may exist as a matter of law where he clearly had notice of the allegedly misrepresented fact and yet proceeded with the sale. *See Simmons v. Wooten*, 241 Ga. 518, 246 S.E.2d 639 (1978) (dismissing action for fraud brought by grantee for alleged grantor misrepresentations in the amount of acreage conveyed, where grantee was shown actual boundary lines, conducted his own survey, was aware of possession and occupancy of the disputed acreage by adverse landowners and was read the contract of sale, warranty deed and security deed, all of which recited the lesser acreage).

■ On review of the foregoing Georgia appellate decisions, it is apparent that the facts in the present case do not show, as a matter of law, that plaintiff failed to exercise common prudence and ordinary diligence before acting on the alleged misrepresentations. Certainly, this is not a case of "blind reliance." Plaintiff visited the park on several occasions and corresponded with and questioned Mr. May extensively about the operation of the park. *Cf. Fenley v. Moody*, 104 Ga. 790, 793, 30 S.E. 1002 (1898) ("[W]e are not aware of any rule of law, or decision of any court, that goes to the extent of saying that one who has been imposed upon by a deceitful and false statement can have no relief unless, before acting upon such a statement, he had exhausted all means at his command to ascertain its truth."); *Smith v. Holman*, 117 Ga.App. 248, 160 S.E.2d 533 (1968). During the course of these discussions, plaintiff sought verification from Mr. May of several items, most notably the eight month income statement and the yearly projection therefrom. Such conduct cannot be termed blind reliance as a matter of law. *Cf. Zeeman v. Black, supra.* The Georgia Court of Appeals has commented:

> [W]here the basis upon which the contract was entered upon lies in the existence or nonexistence of certain material facts, the verity of which needs must be ascertained from the statement of one acquainted with such facts, each of the contracting parties has a right to rely upon the truth of the other's statements

with reference thereto, when such statement relate to matters apparently within the knowledge of the party asserting them; and to do this without checking up the statement with the declarations of other and different persons, in order, by such and investigation, to test their probable truth.

*Deibert v. McWhorter*, 34 Ga.App. 803, 804, 132 S.E. 110 (1925); *see Daugert v. Holland Furnace Co.*, 107 Ga.App. at 569, 130 S.E.2d 763; *Anderson v. R. H. Macy & Co., Inc.*, 101 Ga.App. 894, 897, 115 S.E.2d 430 (1960).

Furthermore, the fraud at issue is not mere silence as to a material fact which could have been discovered by simple inspection, *cf. Westbrook v. Beusse, supra*, but rather pertains to certain affirmative or positive misrepresentations. Even if defendant's silence had formed the basis of plaintiff's action, it is by no means shown, as a matter of law, that plaintiff could have discovered the septic and water system problems, *see affidavit of Arlette C. Stewart, Home Folks Office Manager*, by simple inspection of the premises. *See Holman v. Reusken*, 246 Ga. 557, 272 S.E.2d 292 (1980); *Wilhite v. Mays*, 140 Ga.App. 816, 232 S.E.2d 141 (1976), *aff'd*, 239 Ga. 31, 235 S.E.2d 532 (1977) (carving out exception to rule of caveat emptor). Once again, Georgia law does not require a defrauded party to exhaust all means at his disposal to ascertain the truth of representations before acting thereon. *See Elliot v. Marshall*, 179 Ga. 639, 640, 176 S.E. 770 (1934).

As a final matter, the Court is unable to conclude, as a matter of law, that plaintiff had actual or constructive notice of the verity of defendant's representations before acting thereon. Defendant contends that the apportionment statement, prorating amounts due from tenants for the month of September, provided plaintiff with notice of the park's actual gross income. Certainly, on the basis of the apportionment statement, plaintiff could have projected a yearly gross income; however, such a projection would have assumed an occupancy rate well below defendant's representation. *See Affidavit of Paul F. Gibson ¶¶ 3, 16; Deposi-*

*tion of William Shelley May, Sr.,* at 60–70. Defendant also argues that plaintiff had access to Home Folks' books and could have ascertained the truth of Mr. May's income representations. Yet, in light of plaintiff's question of Mr. May, both oral and written, about the park's income and Mr. May's written verification of plaintiff's income projections, the Court finds that whether or not plaintiff exercised due diligence in failing to inspect defendant's books is a question of fact for the jury. *Cf. Funding Systems Leasing Corp. v. Pugh,* 530 F.2d 91, 94 (11th Cir.) ("Careful consideration of the information contained in the financial statement should be all that was required in the instant commercial transaction."). *See generally Dorsey v. Green,* 202 Ga. 655, 44 S.E.2d 377 (1947); *Johnson v. Sherrer,* 197 Ga. 392, 29 S.E.2d 581 (1944); *Elliot v. Marshall,* 179 Ga. 639, 176 S.E. 770 (1934); *Daugert v. Holland Furnace Co.,* 107 Ga. App. 566, 130 S.E.2d 763 (1963) (stating rule generally applied by Georgia courts that issue of plaintiff's proper diligence is for determination by the jury). Accordingly, this aspect of defendant's motion for summary judgment is DENIED.

*Due diligence to discover fraud giving rise to cause of action*

■ The parties agree that the applicable statute of limitations for an action for fraud and deceit is four years. Ga.Code Ann. § 3–1002. In the present case, plaintiff's cause of action ostensibly accrued on September 17, 1976, the date of closing. Thus, unless tolled, the statute of limitations would have expired in September, 1980, four months prior to the commencement of plaintiff's suit on January 5, 1981. As noted earlier, *see Shipman v. Horizon Corporation, supra,* section 3–807 effectively tolls the statute of limitations until the "actual" fraud which gave rise to plaintiff's cause of action is discovered, or, in the exercise of reasonable diligence should have been discovered. Hence, the second inquiry presented by defendant's motion for summary judgment is whether, as a matter of law, plaintiff, in the exercise of reasonable diligence, should have discovered the subject fraud prior to January 5, 1977.

Plaintiff's affidavit, which the Court accepts for purposes of defendant's motion, reveals that the water and septic system problems did not become fully apparent until after operation of the park. Additionally, plaintiff shows that the accuracy of Mr. May's income figures could be tested only after operation of the park. (Indeed, defendant indicated his agreement with this proposition in his deposition.) Plaintiff first informed Mr. May of his problems with the park by letter dated April 14, 1977 and then again on May 10, 1977.

On review of these materials, the Court finds a genuine issue of material fact as to whether plaintiff exercised due diligence to discover the fraud which formed the basis of the present action. *See Jim Walter Corp. v. Ward,* 245 Ga. 355, 357, 265 S.E.2d 7 (1980) (question of reasonable diligence under section 3–807 is for determination by the jury using an objective "prudent man" standard). Accordingly, defendant's motion for summary judgment on this second ground is DENIED.

As a final basis for summary judgment, defendant argues that the merger and disclaimer clause in the sales contract executed by the parties precludes a claim of fraud in the inducement. Plaintiff counters that the language of the merger and disclaimer clause is ambiguous and contends that, in any event, "a merger or integration clause contained in a contract being attacked for fraud does not preclude the introduction of parol evidence to show that the contract was fraudulently induced." *Plaintiff's response brief,* at 11.

■ Georgia courts recognize that, when a vendee is induced to enter into a contract by fraud, he has an election of remedies. The vendee may rescind the contract and seek restitution or he may affirm the contract and seek damages for the fraud. *See Atlanta Car Wash, Inc. v. Schwab,* 215 Ga. 319, 320, 110 S.E.2d 341 (1959); *Tuttle v. Stovall,* 134 Ga. 325, 328, 67 S.E. 806 (1910); *Corbin v. Lee,* 121 Ga. App. 784, 785 (1970); *American Service Co. v. Berry,* 108 Ga.App. 413, 415–16, 133

S.E.2d 433 (1963). The rationale for such an election, of course, is that plaintiff may not have double recovery—both restitution and damages. *See* D. Dobbs, *Remedies* § 9.4, at 620. Both actions for rescission and for damages, are at law and sound in tort, not in contract. *See Wade Ford, Inc. v. Perrin,* 111 Ga.App. 794, 794, 143 S.E.2d 420 (1965).

Where the vendee elects rescission, he must, upon discovery of the fraud, promptly restore the property received under the contract to the vendor or make a bona fide tender of such property. *See Tuttle v. Stovall,* 134 Ga. at 329, 67 S.E. 806; *Brown v. Techdata Corp.,* 238 Ga. 622, 626, 234 S.E.2d 787 (1977); *Gem City Motors, Inc. v. Minton,* 109 Ga.App. 842, 845, 137 S.E.2d 522 (1964). Having made such a rescission of the contract at law, the vendee is not bound by any of the contract's provisions, *see Brown v. Ragsdale Motor Co.,* 65 Ga.App. 727, 731, 16 S.E.2d 176 (1941), and may, upon proof of the requisite elements of fraud, recover the entire purchase money paid, in other words, full restitution. *Gem City Motors, Inc. v. Minton,* 109 Ga.App. at 845, 137 S.E.2d 522. *See generally Bob Maddox Dodge v. McKie,* 155 Ga.App. 263, 270 S.E.2d 690 (1980).

Where the vendee affirms the contract "he may keep the fruits of the contract and maintain an action for the damages suffered by reason of the fraud," *Tuttle v. Stovall,* 134 Ga. at 329, 67 S.E. 806, that is, the difference between the represented value of the thing sold and its actual value. Although "the right to affirm the contract and the right to sue [in tort] for damages for the fraud coexist," Georgia courts hold that, by affirmance, the vendee in effect stands on the contract and is bound by its provisions. *See Garrett v. Diamond,* 144 Ga.App. 428, 430, 240 S.E.2d 912 (1977); *Hannah v. Shauck,* 131 Ga.App. 834, 835, 207 S.E.2d 239 (1974); *American Service Co. v. Berry,* 108 Ga.App. 413, 416, 133 S.E.2d 433 (1963). Thus, the vendee "may not recover if any of the contractual provisions preclude him from establishing any of the five essential elements of an action in tort for fraud and deceit." *Hannah v. Shauck,* 131 Ga.App. at 835, 207 S.E.2d 239.

One such contractual provision, a comprehensive merger and disclaimer clause, may foreclose a defrauded party from proving the fourth element of a cause of action in fraud and deceit—reliance on the representation. *See Condios, Inc. v. Driver,* 145 Ga.App. 537, 538, 244 S.E.2d 85 (1978). Thus, where there is no fraud in the execution of the contract, Georgia courts have held that the following express language in a merger and disclaimer precludes recovery of damages for fraud in the inducement: (1) "This instrument constitutes the entire agreement between the parties and any representations, inducements, promises or agreements, oral or otherwise, not embodied herein shall not be binding upon the parties hereto," *Kot v. Richard P. Rita Personnel System International, Inc.,* 134 Ga.App. 438, 438, 214 S.E.2d 690 (1975); (2) "No salesman's verbal agreement is binding on the Company; all terms and conditions of this sale are expressed in this agreement; any promises or understanding not herein specified in writing are hereby expressly waived," *Holbrook v. Capital Automobile Co.,* 111 Ga.App. 601, 602, 142 S.E.2d 288 (1965); (3) "[N]o representation, promise or inducement not included in this contract shall be binding on any party hereto," *Alpha Kappa Psi Bldg. Corp. v. Kennedy,* 90 Ga.App. 587, 591, 83 S.E.2d 580 (1954); and (4) "[S]aid property is purchased solely on judgment of vendee without any warranty or representations from vendor except that the title is unencumbered," *Brown v. Ragsdale Motor Co.,* 65 Ga.App. 727, 16 S.E.2d 176 (1941). A party affirming the contract, who is consequently bound by the above-quoted provisions, may not successfully claim reliance on prior representations.

In this case, as noted earlier, plaintiff affirmed the contract and is seeking damages for the fraud. *Cf. Gem City Motors, Inc. v. Minton,* 109 Ga.App. at 849, 137 S.E.2d 522 (sale of property by vendee to third party does not, without more, consti-

tute waiver of the fraud). The merger and disclaimer clause in the sales contract consists of two sentences as follows: "This writing contains the full, final, and exclusive statement of the contract of the Seller and Buyer. No representations or statements have been made by Seller concerning collateral except as herein stated, and no warranty, express or implied by Seller arises apart from this writing." The first sentence, a general merger clause, and the last clause of the second sentence, a disclaimer of express or implied warranties, would be relevant if plaintiff's action sounded in contract for breach of warranty or for breach of some other contractual agreement between the parties arising outside of the writing. The apposite clause for an action in tort for fraud and deceit in the inducement of the contract is the first part of the second sentence—"No representations or statements have been made by Seller concerning collateral except as herein stated."

It is apparent that this clause in the sales contract between the parties, in juxtaposition with the above-quoted disclaimer clauses given effect by Georgia courts, is at best ambiguous. The clause does not provide that no representations or inducements shall be binding on the parties or that the vendee acts solely on his own judgment. Moreover, the term "collateral" is not defined in the sales contract. While the contract does refer to "personal property," described in an attached schedule "A", only the seventeen trailers sold with the park are listed in that schedule. A schedule "B" attached to the sale closing statement includes "all septic tank systems," but does not list the water system and pumps. Finally, the income statement provided by Mr. May is clearly not comprehended in the term "collateral."

Accordingly, on the basis of the foregoing discussion, defendant's third ground in support of its motion for summary judgment is DENIED.