Arthur LaFAZIA et al.

v.

James HOWE et al.

No. 89–237–A.

Supreme Court of Rhode Island.

June 1, 1990.

Kevin S. Cotter, Gunning, LaFazia & Gnys, Providence, for plaintiff.

Stephen M. Miller, Howe & Miller, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This matter comes before this court on the defendants' appeal from a Superior

Court order granting the plaintiffs' motion for summary judgment. We affirm.

The facts relevant to this appeal are as follows. The defendants, James and Theresa Howe (the Howes), entered into a contract with plaintiffs, Arthur LaFazia and Dennis Gasrow, to purchase Oaklawn Fruit and Produce (Oaklawn), a delicatessen, on July 6, 1987. The Howes entered into the contract with the idea that Theresa Howe's sister and brother would help establish the business and would eventually become the owners. The Howes had no experience in the business of running a delicatessen, although they had owned a jewelry business for over twenty years.

The Howes met with plaintiffs to discuss the sale for the first time in the middle of June 1987. At that time it had been represented to them that it was an extremely profitable business, that plaintiffs had operated it for eight years, and that they were "burned out." Also, Arthur LaFazia's father, who had done a lot of the preparatory work for the sandwich part of the business (the bulk of the business), had recently passed away. After the first meeting the Howes asked plaintiffs for the tax returns, accounts payable, and other records so they could determine the business's profitability and the amount plaintiffs were spending on inventory. The plaintiffs told the Howes that since they always paid cash and did not keep very good books, there were no records except tax returns, which, they said, did not reflect the true figures. The Howes reviewed the tax returns and had a manager of a sandwich shop with whom they were friendly review the returns as well. Relying on the information they received, they decided that this was not a viable business. The Howes met with plaintiffs again and questioned them regarding the low figures of their tax returns and their previous representation that the business brought in between $450,000 and $500,000 a year. The plaintiffs pointed out to the Howes that they both had fancy cars, lived in fancy houses, and that Dennis Gasrow supported a family with three children. James Howe said he was convinced by their representations that the tax returns did not re-

flect the true value of the business and that plaintiffs had no other income. In addition Theresa Howe and her brother visited the store a few times before the Howes decided to purchase it and observed what appeared to be a fairly busy sandwich trade.

The Howes agreed to buy the business for $90,000. At the closing the Howes paid plaintiffs $60,000 and signed a promissory note for $30,000. The defendants were represented at the closing by their son, a Providence attorney. Included in the Memorandum of Sale were merger and disclaimer clauses:

"9. The Buyers rely on their own judgment as to the past, present or prospective volume of business or profits of the business of the Seller and does not rely on any representations of the Seller with respect to the same.

"10. No representations or warranties have been made by the Seller, or anyone in its behalf, to the Buyers as to the condition of the assets which are the subject of this sale, and it is understood and agreed that said assets are sold 'as is' at the time of sale.

" * * *

"12. This agreement constitutes the entire agreement between the parties hereto."

Both Theresa Howe and James Howe do not remember reading paragraph 9 or 10 when they signed the documents at the closing. They assumed that their son had reviewed the documents beforehand.

The Howes took over the management of the business the day after the closing. James Howe stated that after approximately one month his business experience told him that "there was a problem." He spoke to plaintiffs, and they told him that in September and October, after the vacation months, business would increase. The promissory note was due in October, and the Howes, who claimed that the business had lost money from the first day, could not make the payment on time. In an attempt to keep his bargain, James Howe said he gave plaintiffs two payments for

$10,000, "even though [he] knew [he] had been taken." To make matters worse, the fruit-basket business around the Christmas season did not materialize as plaintiffs had said it would. Consequently the $10,000 outstanding on the promissory note has never been paid. In February 1988 the Howes sold the business for $45,000.

On February 2, 1988, plaintiffs instituted this suit for breach of a promissory note. The Howes counterclaimed that plaintiffs made specific misrepresentations for the purpose of inducing defendants to enter into the contract. On March 2, 1989, plaintiffs filed a motion for summary judgment on the claim and the counterclaim. The motion was heard on April 18, 1989, and a decision was entered for plaintiffs on both claims on April 25, 1989. At the hearing the trial justice addressed defendants:

> "I reviewed the contract in this case, and the only action left to you on your counter-claim is to prove that there was deceit; and it seems to me he gave you the tax returns. You came to an opinion that * * * the tax returns didn't justify the asking price. The provisions of the contract clearly indicate that the parties are making their own judgment.
>
> "The contract is complete and regular on its face. I see no ability in the face of that contract for you to show a fraudulent misrepresentation. The contract d[i]sallows any representations. The parties were acting upon their own."

The defendants appealed the judgment to this court on May 3, 1989.

The defendants assert on appeal that summary judgment was inappropriate because plaintiffs' misrepresentations raised an issue of material fact concerning whether such misrepresentations were intended to induce defendants to purchase a failing business. The defendants argue that plaintiffs' material misrepresentations, even if innocently made, were a basis for rescinding the contract. The plaintiffs assert that the merger and the disclaimer clauses in the contract obviate defendants' claim of misrepresentation. According to plaintiffs, the specific disclaimer destroys the allegation in defendants' claim that the agreement had been executed in reliance on any oral representations.

■ We agree with plaintiffs' argument and affirm the trial justice. In our review of a summary-judgment order we use the same standards as the trial justice. We examine the pleadings and the affidavits in the light most favorable to the nonmoving party, and if no issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. *Pacia v. Forte Bros., Inc.*, 565 A.2d 529, 530 (R.I.1989) (and cases cited therein); *see also* Super.R.Civ.P. 56.

The trial justice came to the conclusion that defendants' only recourse on their counterclaim was an action for deceit, yet defendants argue that they are entitled to a rescission of the contract. In *McGovern v. Crossley*, 477 A.2d 101, 103 (R.I.1984), we stated that a person " 'who has been induced by fraud to enter into a contract may pursue either one of two remedies.' " That person "may rescind the contract or affirm the contract and sue for damages in an action for deceit." *Id.* The tort claim and the claim for rescission afford alternative sources of relief in which, if one is granted, the other is withheld. *Majewski v. Porter*, 121 R.I. 757, 764, 403 A.2d 248, 252 (1979). Thus one cannot recover on both theories.

■ This court has also ruled that the right to rescind a contract must be exercised with "reasonable promptness" after the discovery of the facts that give rise to the right. *Majewski*, 121 R.I. at 764, 403 A.2d at 251; *see also Evangelista v. Antonio DeCubellis, Inc.*, 79 R.I. 142, 148, 85 A.2d 69, 72 (1951). The Howes attest to the fact that they discovered by October 1987, when the promissory note was due, that they had been "taken." Instead of maintaining an action for abrogation or undoing of the contract, they made $20,000's worth of payments on the contract, and a few months later, in February 1988, they sold the business. The evidence is clear and unambiguous that the Howes did not declare by word or act that the contract had been rescinded. They elected to affirm the contract instead. Even in the counter-

claim and the amended counterclaim defendants never brought up their claim for rescission. Instead they asked for relief in the form of "costs, interest and attorney's fees as well as punitive damages." They also argued the elements of an action for deceit in the counterclaim.

■ In *Halpert v. Rosenthal*, 107 R.I. 406, 267 A.2d 730 (1970), we illustrated the difference between a claim for damages for intentional deceit and a claim for rescission. "Deceit is a tort action, and it requires some degree of culpability on the misrepresenter's part." *Id.* at 412, 267 A.2d at 733. It is fundamental to actions predicated on the theory of deceit that the party claiming deceit present evidence that shows that he or she was induced to act because of his or her reliance upon the alleged false representations. *East Providence Loan Co. v. Ernest*, 103 R.I. 259, 263, 236 A.2d 639, 642 (1968).

■ We find that there was no issue of material fact in the instant case and that summary judgment was appropriate because the merger and disclaimer clauses preclude defendants from asserting that plaintiffs made material misrepresentations regarding the profitability of the business. The clauses prevent defendants from successfully claiming reliance on prior representations.

■ Although we have previously held that fraud vitiates all contracts, *Bloomberg v. Pugh Brothers Co.*, 45 R.I. 360, 364, 121 A. 430, 431 (1923), we emphasized in *Bloomberg* that one could not "by such a provision as is contained in the contract in this case" escape liability for fraudulent misrepresentations. *Id.* The merger and disclaimer clause in *Bloomberg* was of a general, nonspecific nature:

" 'The foregoing contains the whole agreement between the parties to this contract and they, and each of them, shall be estopped from asserting, as an inducement to make said contract, any misrepresentation upon the part of either of the parties hereto, or any agent or servant of either of the parties hereto. Should any such misrepresentation be alleged in any suit at law or proceeding in equity, then either of the parties hereto may plead this contract in bar thereof.' " *Id.* at 362–63, 121 A. at 430.

The provision in the instant case differs considerably from the one quoted above in that it is not a general but a specific disclaimer. Such a provision, in our view, shall not vitiate the contract if it was read and understood by the party now claiming fraud and the provision itself was not procured by fraud.

We shall look to some decisions from other jurisdictions to illustrate our holding. In *Gibson v. Home Folks Mobile Home Plaza, Inc.*, 533 F.Supp. 1211 (S.D. Ga. 1982), the purchaser of a mobile-home park filed an action against the seller, seeking damages for fraud and deceit in making misrepresentations regarding the mobile-home park's facilities and the conditions of its business. The sales contract contained the following merger and disclaimer clause: " 'This writing contains the full, final, and exclusive statement of the contract of Seller and Buyer. No representations or statements have been made by Seller concerning collateral except as herein stated, and no warranty, express or implied, by Seller arises apart from this writing.' " *Id.* at 1214. The defendant in *Gibson* filed a motion for summary judgment, arguing, inter alia, that the merger and disclaimer clause in the sales contract precluded the plaintiff's action predicated on alleged prior fraudulent representations. *Id.* at 1215. The United States District Court recognized that a comprehensive merger and disclaimer clause may foreclose a defrauded party from proving the element of reliance on the representation and gave examples of such clauses by citing Georgia cases wherein parties were held to be bound by such provisions. *Id.* at 1221. However, the court decided to deny summary judgment on this issue in *Gibson* because it found that the disclaimer clause was at best ambiguous. If the clause in the case before us had been as general and had not provided that the buyer was to rely solely on his own judgment regarding the past, present, or prospective volume of the business, the

trial justice's ruling would have been inappropriate.

Our case, however, is factually more closely similar to *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 157 N.E.2d 597, 184 N.Y.S.2d 599 (1959), wherein the purchaser initiated an action for damages for fraud because of alleged false representations by the sellers regarding the operating expenses of the building the plaintiff sought to purchase and the profits to be derived from the investment. The following merger and disclaimer language appeared in the contract:

> " 'The Purchaser has examined the premises agreed to be sold and is familiar with the physical condition thereof. The Seller has not made and does not make any representations as to the physical condition, rents, leases, *expenses, operation* or any other matter or thing affecting or related to the aforesaid premises, except as herein specifically set forth, and the Purchaser hereby *expressly acknowledges that no such representations have been made, and the Purchaser further acknowledges that it has inspected the premises and agrees to take the premises 'as is'* * * * It is understood and agreed that all understandings and agreements heretofore had between the parties hereto are merged in this contract, which alone fully and completely expresses their agreement, *and that the same is entered into after full investigation, neither party relying upon any statement or representation,* not embodied in this contract, made by the other. The Purchaser has inspected the buildings standing on said premises and is thoroughly acquainted with their condition.' " *Id.* at 320, 157 N.E.2d at 598, 184 N.Y.S.2d at 601.

The New York Court of Appeals wrote: "Were we dealing solely with a general and vague merger clause, our task would be simple. * * * Here, however, plaintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded." *Id.* at 320, 157 N.E.2d at 598–99, 184 N.Y.S.2d at 602. The court held that "[s]uch a spe-cific disclaimer destroys the allegations in the complaint that the agreement was executed in reliance upon these contrary oral representations." *Id.* at 320–21, 157 N.E.2d at 599, 184 N.Y.S.2d at 602.

■ In the case before us we are also confronted with such specific language regarding the very matter concerning which defendants now claim they were defrauded—the profitability of the business. Clause 9 of the Memorandum of Sale declares specifically that the buyers are to rely on their own judgment and not on any representations of the sellers regarding the past, present, or prospective volume of business, or profits of the business. Clause 10 states that no warranties have been made by the sellers regarding the condition of the assets and that the assets are sold "as is" at the time of the sale.

Like the complaint in *Danann Realty Corp.,* defendants' counterclaim contained no allegations that the contract had not been read by the purchaser or that the merger and disclaimer provisions had not been understood or had been procured by fraud. *See Danann Realty Corp.,* 5 N.Y.2d at 321, 157 N.E.2d at 599, 184 N.Y. S.2d at 602. James Howe said he certainly understood the documents when he signed them, although both he and his wife no longer remember seeing the merger and disclaimer clauses. Moreover, at trial it was established that both parties were represented by counsel at the closing. Although plaintiffs' counsel drew up the sales contract, defendants' counsel admitted reviewing the document with his clients and making some initial changes.

For these reasons we find that defendants' asserted reliance on the oral representations of plaintiffs is not justifiable. We agree with the court in *Danann Realty Corp.* when it stated that "[t]o hold otherwise would be to say that it is impossible for two businessmen dealing at arm's length to agree that the buyer is not buying in reliance on any representations of the seller as to a particular fact." 5 N.Y.2d at 323, 157 N.E.2d at 600, 184 N.Y. S.2d at 604.

Having examined the pleadings and affidavits in the light most favorable to the defendants, we find that there was no issue of material fact. The contract for sale and the promissory note were complete and unequivocal. Since the contract disallowed any reliance on oral representations regarding the profitability of the business, the defendants were acting upon their own judgment.

For these reasons the trial court's order granting summary judgment to the plaintiffs is affirmed, the defendants' appeal is denied and dismissed, and the papers in the case are remanded to the Superior Court.