Harry D. BOGOSIAN, Jr., et al.

v.

Charles BEDERMAN, et al.

No. 2002–144–Appeal.

Supreme Court of Rhode Island.

June 2, 2003.

Anthony DeSisto, Providence, for Plaintiffs.

John W. Ranucci, Providence, Richard Fisher, Newport, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, JJ., and SHEA, J. (Ret.).

## OPINION

SHEA, JUSTICE (Ret.).

The defendants, Charles Bederman and Philip T. Caputo, in their capacities as trustees for the Anton Noll, Inc., Employees Pension Trust (the defendants),[1] appeal from an amended judgment that was entered pursuant to Rule 59(e) of the Superior Court Rules of Civil Procedure that ordered the return of an escrowed property purchase deposit made by the plaintiffs, Harry D. Bogosian, Jr. and Eileen F. Bogosian (the plaintiffs).[2] They contend that the trial justice, in this nonjury case, erred in amending his judgment because, previously, he had found that the plaintiffs had not proven any damages as a result of the defendants' fraudulent misrepresentations to the plaintiffs. The previous judgment had ordered the deposit to be given to the defendants.

### Facts/Procedural History

In 1996, plaintiffs attempted to purchase property from defendants on Long Wharf in Newport, Rhode Island. The parties

---

1. Another defendant in this matter, Heritage of Newport, Inc., is not a party to this appeal. By agreement of the parties, a claim against a real estate agent, Ruth Cobaugh, was dismissed when she passed away before trial.

Her deposition testimony was introduced at trial.

2. The deposit was in the amount of $27,500.

entered into a purchase and sale agreement but the sale never was consummated due to the rapid deterioration of the relationship between the parties. This deterioration was exacerbated greatly by misrepresentations made by the real estate agent who was handling the sale. The plaintiffs attempted to affirm the contract and sought compensatory and punitive damages from defendants in a suit for fraudulent misrepresentation.[3] The defendants counterclaimed for breach of contract.

At the conclusion of the trial, the trial justice found that defendants fraudulently had misrepresented the condition of the property to plaintiffs and that plaintiffs had relied upon those representations to their detriment. However, he awarded only $1 plus costs to plaintiffs, finding that "[t]here is absolutely no proof at trial as to what the lost benefit of the bargain, if any is." He determined that the deposit could not be returned because plaintiffs did not seek to rescind the contract; rather, they had attempted to affirm it and to seek damages. So, he ordered the deposit money to be paid to defendants. Having found that plaintiffs were fraudulently induced into entering the contract, the trial justice dismissed defendants' counterclaim.

After the judgment was entered, plaintiffs filed a Rule 59(e) motion in Superior Court to amend the judgment, asserting that the trial justice's failure to return the deposit money, plus interest, was a manifest error of law. In the alternative, they sought an additur in the amount of the money on deposit. The trial justice granted plaintiffs' motion to amend the judgment and awarded them the return of the deposit, plus statutory interest and costs. The defendants timely appealed.

**Analysis**

The defendants assert that the trial justice erred in granting the Rule 59(e) motion because there was no manifest error of law on the face of the judgment. They also assert that the trial justice erred in finding fraud and that, instead, he should have found plaintiffs in breach of contract.

■ A trial justice may review his or her own decision after a nonjury trial in a civil matter "only if [he or she] found a manifest error of law in the judgment entered or if there was newly discovered evidence but unavailable at the original trial and sufficiently important to warrant a new trial." *American Federation of Teachers Local 2012 v. Rhode Island Board of Regents for Education,* 477 A.2d 104, 105–06 (R.I.1984). "For our purposes a manifest error of law in a judgment would be one that is apparent, blatant, conspicuous, clearly evident, and easily discernible from a reading of the judgment document itself." *Id.* at 106. Accordingly, "[i]f the error is not obvious unless one reads the underlying decision * * *, the error is not a manifest error in our opinion." *Id.*

■ In this case, because the judgment document entered after the trial did not contain a manifest error of law, the trial justice need not have considered the Rule 59(e) motion. However, as we have stated before, this Court has the authority to affirm a trial justice for reasons other than those given by the trial justice. *See Sobanski v. Donahue,* 792 A.2d 57, 58–59(R.I.2002). After reviewing the record, we conclude that plaintiffs were entitled to the return of their deposit.

---

**3.** Two other claims were dismissed after a hearing on defendants' motion for summary judgment.

 "In reviewing a trial justice's decision in a nonjury civil case, we will not disturb his or her factual findings 'unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties.'" *Wilkinson v. State Crime Laboratory Commission,* 788 A.2d 1129, 1144 (R.I.2002) (quoting *Harris v. Town of Lincoln,* 668 A.2d 321, 326 (R.I.1995)). Likewise, "this Court will not disturb determinations of credibility in a non jury trial unless the findings are clearly wrong or the [trial justice] misconceived or overlooked material evidence." *Andreozzi v. Andreozzi,* 813 A.2d 78, 82 (R.I.2003) (per curiam) (citing *Environmental Scientific Corp. v. Durfee,* 621 A.2d 200, 206 (R.I.1993)). That is because "[i]t is not the function of this court to weigh the credibility of the witnesses." *State v. Sparks,* 667 A.2d 1250, 1251 (R.I. 1995) (per curiam). "The task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." *Id.* (quoting *Walton v. Baird,* 433 A.2d 963, 964 (R.I. 1981)).

The defendants assert that the trial justice erred in finding that they had made any fraudulent representations to plaintiffs and contend that Mr. Bogosian used the real estate agent's death as an "opportunity to color [her] representations as he saw fit." They also contend that the trial justice erred in denying their counterclaim for breach of contract because plaintiffs did not appear at the appointed closing where defendants were ready willing and able to close the sale.

 "[F]raud 'vitiates all contracts.'" *Travers,* 682 A.2d 471, 472 (R.I. 1996) (per curiam) (quoting *LaFazia v. Howe,* 575 A.2d 182, 185 (R.I.1990)). However, "'a party who has been induced by

fraud to enter into a contract' may elect either to rescind the contract, or 'to affirm the contract and sue for damages in an action for intentional deceit or misrepresentation.'" *Stebbins v. Wells,* 766 A.2d 369, 372 (R.I.2001) (per curiam) (quoting *Travers v. Spidell,* 682 A.2d at 472). "[I]f one is induced to enter into a contract based upon a fraudulent statement from the other party to the contract, then the party who has been fraudulently induced is not bound by the contract." *Bjartmarz v. Pinnacle Real Estate Tax Service,* 771 A.2d 124, 127 (R.I.2001) (per curiam). To establish a prima facie damages claim in a fraud case, "the plaintiff must prove that the defendant 'made a false representation intending thereby to induce plaintiff to rely thereon' and that the plaintiff justifiably relied thereon" to his or her damage. *Stebbins,* 766 A.2d at 372.

 In his decision, the trial justice clearly and specifically found credible the testimony of plaintiff Harry Bogosian. Conversely, he found that the real estate agent's deposition testimony displayed "a pattern of vagueness and inconsistencies." After reviewing the record, we see no reason to disturb those credibility findings nor to disturb his conclusion that the credible testimony revealed that defendants were liable for fraudulent misrepresentation. However, the trial justice should have returned the deposit to plaintiffs in the first instance.

During trial, it was revealed that since this action arose, title to the subject property had been transferred legally to an unrelated third party at a higher price. Thus, although plaintiffs maintained that they were seeking to affirm the contract, affirmation was impossible because defendants no longer possessed title to the property. Consequently, the only remedy available to plaintiffs was that for an action

of rescission; thus, plaintiffs were entitled to a refund of their deposit.

 The return of a deposit is simply a reimbursement rather than an award of pecuniary damages, and thus the plaintiffs are not entitled to the addition of statutory interest. *See Rhode Island Insurer's Insolvency Fund v. Leviton Manufacturing Co.*, 763 A.2d 590, 597–98 (R.I.2000). *See also* G.L.1956 § 9–21–10.

Accordingly, and for the foregoing reasons, the defendants' appeal is denied and dismissed and the judgment is affirmed. The papers are returned to the Superior Court.

Justice FLAHERTY did not participate.