PRINCE HEATON ENTERPRISES, INC., et al., Plaintiffs,

v.

BUFFALO'S FRANCHISE CONCEPTS, INC., et al., Defendants.

No. CIV.A.1:99–CV–258–TWT.

United States District Court, N.D. Georgia, Atlanta Division.

March 17, 2000.

Jay D. Bennett, Alston & Bird, Atlanta, GA, David C. Butler, Office of David C. Butler, Marietta, GA, for Prince Heaton Enterprises Inc., Prince–Heaton Enterprises of Roswell Inc., Enterprises of Parkaire Inc., Prince–Heaton Enterprises of Douglasville Inc., Highway 41 Buffalo's Inc., Prince–Heaton Enterprises of Alpharetta, Inc., Burnt Hickory Buffalo's Inc., Grassland Crossing Buffalo's, Inc., Mcginnis Ferry Buffalo's, Inc., Prince–Heaton Enterprises of Mableton, Inc., Prince–Heaton Enterprises of Orlando, Inc., Prince–Heaton Enterprises of Sprayberry, Inc., James R. Prince, plaintiffs.

James C. Rubinger, Meredith Fuchs, Wiley Rein & Fielding, Washington, DC, Allan J. Tanenbaum, Cohen Pollack Marlin Axelrod & Tanenbaum, Atlanta, GA, for Buffalo's Franchise Concepts, Inc., David Hyde, Ralph Perrella, defendants.

### ORDER

THRASH, District Judge.

This is an antitrust and civil RICO action with pendant state claims. The case is before the Court for consideration of Defendants' Motion to Dismiss the First Amended Complaint [Doc. 19]. For the reasons set forth below, the motion will be granted in part and denied in part.

### I.  BACKGROUND

This is a dispute between a group of Buffalo's Café franchisees and their franchisor.[1] Buffalo's Cafes are medium-priced, casual dining restaurants specializing in Buffalo-style chicken wings. Plaintiffs are several incorporated Buffalo's Café franchisees, their parent corporation, and a principal. Plaintiff James R. Prince is a citizen of Georgia and the sole or majority shareholder of each of the corporate Plaintiffs. Plaintiff Prince Heaton Enterprises, Inc. (hereafter "Prince Heaton"), the parent corporation, is a Florida corporation with its principal place of business in Fulton County, Georgia. The remaining corporate plaintiffs, all Georgia corporations, each operate or have operated a Buffalo's restaurant in various locations. Defendants are Buffalo's Franchise Concepts, Inc. (hereafter "Buffalo's, Inc.") and two principals of that corporation. Buffalo's, Inc. is a franchisor that sells the rights to operate Buffalo's franchises and to use the Buffalo's Café restaurant system. Buffalo's, Inc. is a Georgia corporation with its principal place of business in Cobb County, Georgia. The individual Defendants are Messrs. David Hyde and Ralph Perrella. Mr. Hyde is Vice–President for International Development, Secretary and Director for Buffalo's, Inc. Mr. Perrella is Vice–President of Design, Architecture and Construction, Treasurer and Chairman of the Board of Directors for Buffalo's, Inc.

All Buffalo's franchises are operated pursuant to a franchise agreement prepared by Defendants. In addition to selling individual franchises, Defendants sell area development rights. These rights are memorialized in area development agreements which give the purchaser the exclusive right to operate franchises and enter into franchise agreements for defined areas. At issue here are two area development agreements Mr. Prince and Buffalo's, Inc. entered into in 1991. In January, 1991, Mr. Prince obtained the exclusive right to operate Buffalo's franchises in a portion of Fulton County, Georgia and all of Forsyth County, Georgia. In August, 1991, Mr. Prince and Buffalo's, Inc. entered into another area development agreement for a portion of Cobb County, Georgia and all of Paulding, Douglas and Carroll Counties.

Each of the corporate Plaintiffs—except for the parent company, Prince Heaton

---

1. These background facts are taken from the First Amended Complaint [Doc. 8], hereafter referred to as "the Complaint," and are taken as true for purposes of this motion.

and Prince Heaton Orlando—operates or operated a Buffalo's restaurant. Between 1990 and 1997, the corporate Plaintiffs entered into eight or more franchise agreements with Buffalo's, Inc. for the operation of 12 franchise locations. Each of the 12 were opened and operated in accordance with the agreements. Presently, four of those 12 locations are in operation. Each of these corporate Plaintiffs alleges it paid at least fair market value for a Buffalo's, Inc. restaurant franchise. Alternatively, Plaintiffs allege that the sum they paid for all of their franchises equaled or exceeded the franchises' total fair market value. Plaintiffs allege, among other things, that Buffalo's, Inc. breached the franchise and development agreements entered into with Plaintiffs. Plaintiffs also allege fraud, negligent misrepresentation, conversion, breach of fiduciary duty, violations of federal and state RICO law, and antitrust violations

## II. MOTION TO DISMISS STANDARD

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); *see Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Linder v. Portocarrero,* 963 F.2d 332 (11th Cir.1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construes them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). Notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.,* 753 F.2d 974, 975 (11th Cir.1985), *cert. denied,* 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). Under notice pleading, plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Id.*

## III. DISCUSSION

Plaintiffs allege 22 counts against Defendants. [Doc. 8]. Defendants have moved to dismiss ten of those counts: Counts II, III, IV, V, VI, VII, IX, X, XI, and XV. The Court will address first the allegations of fraud and negligent misrepresentation in Counts VII and XI, respectively. Next, the Court will address Counts V, VI, IX, and X concerning federal and state RICO violations. Third, the Court will address alleged antitrust violations in Counts II, III and IV. Finally, the Court will address the conversion and breach of fiduciary duty claims in Count XV.

### A. FRAUD AND NEGLIGENT MISREPRESENTATION

Plaintiffs allege in Count VII that Defendants committed fraud during the franchise negotiations. Plaintiffs allege negligent misrepresentation in Count XI. In Georgia, the common law tort of fraud requires five elements: (1) a false representation by the defendant; (2) with scienter, or knowledge of the falsity; (3) with intent to deceive the plaintiff or to induce the plaintiff into acting or refraining from acting; (4) on which the plaintiff justifiably relied; (5) with the proximate cause of damages to the plaintiff. *Williams v. Dresser Industries,* 120 F.3d 1163 (11th Cir.1997); *Sears Mortgage Corp. v. Leeds Bldg. Products, Inc.,* 219 Ga.App. 349, 464 S.E.2d 907 (1995), *rev'd on other grounds by* 267 Ga. 300, 477 S.E.2d 565 (1996). Each of these elements must be stated with particularity. Fed. R.Civ.P. 9(b); *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1370 (11th Cir.1997). Negligent misrepresentation is a similar cause of action substituting negligence for the intent to deceive element. *See Robert & Co. Assoc. v. Rhodes–Haverty Partnership,* 250 Ga. 680, 300 S.E.2d 503 (1983).

The first element requires a showing of an affirmative misrepresentation or, in appropriate cases, evidence of suppression of a material fact. *See* O.C.G.A. § 23–2–51—

23–2–54. Plaintiffs allege the former. In the Complaint, Plaintiffs allege that Defendants misrepresented financial data on existing restaurants which concealed the fact that Buffalo's, Inc. had underwritten several of the restaurants' expenditures. [Doc. 8, ¶ 109]. Moreover, Plaintiffs allege that Defendants falsely represented estimates of the financial success of its franchisees. [Doc. 8, ¶ 108]. Further, Plaintiffs allege that Defendants have falsely represented that they would use a national advertising fund to promote the image, name recognition, and reputation of the franchises nationally. [Doc. 8, ¶ 121(c)]. Plaintiffs also allege that Defendants made these misrepresentations to induce Plaintiffs into entering the franchise agreements. These allegations satisfy the requirement to state with particularity the circumstances constituting fraud.

■■■ Defendants contend that the terms of the franchise agreement prevent Plaintiffs from pursuing their fraud claims. Specifically, Defendants argue that Section 27(a) of the franchise agreement precludes a showing by the Plaintiffs of reasonable reliance. Section 27(a) states:

> Franchisee...hereby represents...[t]hat he has conducted an independent investigation of the Franchisor's business and System and recognizes that the business venture contemplated by this Agreement involves business risks and that its success will be largely dependent upon the ability of the Franchisee as an independent businessman. Franchisor expressly disclaims the making of, and Franchisee acknowledges that it has not received any warranty or guarantee, express or implied, as to the potential volume, profits or success of the business contemplated by this Agreement.

[Doc. 19, Exh. 1][2] The franchise agreement also expressly provides "[t]he Franchisor does not make any actual, average, projected, or forecasted sales, profits, or earnings information available to prospective Franchisees." [Doc. 19, Exh. 1, § 18]. Despite this language, Plaintiffs base their fraud claim on alleged misrepresentations regarding a "unique business program," "financial data on the existing restaurants," and "meaningful profits." [Doc. 8, ¶¶ 105, 107, 109]. Plaintiffs also allege that Defendants "falsely represented to Prince likely or factually supportable estimates or projection of the financial success or Buffalo's Café restaurants." [Doc. 8, ¶ 108]. Liability for this allegation is expressly waived by the above cited sections of the parties' agreement. Under the terms of their agreement, therefore, Plaintiffs cannot prove justifiable reliance on misrepresentations about the projected financial success of their franchises. Plaintiffs expressly agreed they would not rely on representations made by Defendants and are bound by their agreement. *Hall v. Coram Healthcare Corporation*, 157 F.3d 1286, 1289 (11th Cir.1998); *Velten v. Regis B. Lippert, Intercat, Inc.*, 985 F.2d 1515, 1522 (11th Cir.1993).

The contractual language above differs from the merger clause at issue in *Gibson v. Home Folks Mobile Home Plaza, Inc.*, 533 F.Supp. 1211 (S.D.Ga.1982) upon which Plaintiffs rely. There, the court found the clause to be ambiguous and, therefore, did not preclude the plaintiffs from proving justifiable reliance. In that case, the court found that "[t]he clause does not provide that no representations or inducements shall be binding on the parties or that the vendee acts solely on his own judgment." *Id.* at 1222. In this case, the Court finds that the contractual language at issue is unambiguous. Plaintiffs expressly agreed that Defendants did

---

**2.** Neither party has contested the Court's consideration of the franchise agreement upon this Motion to Dismiss. When the Plaintiff refers to certain documents in the Complaint and those documents are central to the Plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993).

not make representations regarding sales, profits, or earnings. [Doc. 19, Exh. 1, § 18]. Plaintiffs also agreed that they conducted an independent investigation of the Defendants' business. [Doc. 19, Exh. 1, § 27(a)]. These contractual provisions preclude Plaintiffs from establishing reliance, an essential element of an action in tort for fraud. *Gibson,* 533 F.Supp. 1211. Plaintiffs' other allegations that Defendants converted money from the national advertising fund may further their claim in Count XV for conversion, but do not state a claim for fraud. Accordingly, Defendants' Motion to Dismiss should be granted as to the fraud claim in Count VII and the negligent misrepresentation claim in Count XI. Because the Court finds that Plaintiffs cannot show reliance, the Court need not address Defendants' contentions that Plaintiffs' fraud claims are barred by the statute of limitations.

### B. FEDERAL AND STATE RICO

■ In Counts V, VI, IX and X, Plaintiffs assert claims for federal and state RICO violations. Plaintiffs allege that Defendants engaged in mail fraud by requiring Plaintiffs to mail checks to Buffalo's, Inc. for franchise service fees. Plaintiffs allege fraudulent activity in addition to mail fraud under their Georgia RICO claims. To state a claim for violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, as well as the Georgia RICO statute, O.C.G.A. § 16–14–4, Plaintiffs must allege a "pattern of racketeering activity," consisting of the commission of two or more distinct predicate acts, which are related and have continuity. *Pelletier v. Zweifel,* 921 F.2d 1465, 1496–97 (11th Cir.1991). Mail fraud is included among the predicate acts that can constitute both federal and state RICO violations. 18 U.S.C. § 1961(1), O.C.G.A. § 16–14–3(9). Defendants contend that these allegations should be dismissed by virtue of Plaintiffs' failure to allege a "scheme to defraud" because the acts alleged do not constitute mail fraud. Defendants also contend the Plaintiffs' purported injuries did not proxi-

mately result from the alleged predicate racketeering acts. Finally, Defendants contend that Plaintiffs cannot maintain a claim of intra-corporate conspiracy to violate the RICO statutes.

■ Defendants first argue that Plaintiffs have not properly alleged mail fraud. To succeed on their RICO claims, Plaintiffs must show that Buffalo's, Inc. "engaged in a pattern of acts involving mail fraud." *Pelletier,* 921 F.2d at 1497. Establishing a mail fraud violation requires allegations that Defendants (1) intentionally participated in a "scheme to defraud;" and (2) used the mails in furtherance of the scheme. 18 U.S.C. § 1341; *Pelletier,* 921 F.2d at 1498. Plaintiffs allege that Defendants engaged in a scheme to defraud Plaintiffs by siphoning away advertising funds earmarked for franchisees. Moreover, Plaintiffs allege that between 1991, and the present, the Defendants have caused to be transported in interstate commerce money in an amount more than $5,000 that they obtained from Plaintiffs in furtherance of their scheme. [Doc. 8, ¶¶ 124, 125].

■ For reasons similar to those barring their fraud claim, Plaintiffs' RICO claims also fail. Quite simply, where there is no fraud there is no mail fraud. With respect to the mail fraud allegations, Plaintiffs have failed to allege a "scheme to defraud." Plaintiffs allege that, through mail fraud, Defendants misrepresented the financial condition of other Buffalo's, Inc. franchises. [Doc. 8, ¶ 94]. Where mail fraud is alleged as a proximate cause of the RICO injury, the plaintiff must allege justifiable reliance. *Chisolm v. TranSouth Financial Corp.,* 95 F.3d 331, 336–37 (4th Cir.1996); *Pelletier,* 921 F.2d at 1498–99. As with their fraud claim, Plaintiffs waived any reliance on Defendants' representations in their agreement. Plaintiffs expressly agreed that Defendants made no representations regarding sales or profits. Plaintiffs also agreed that they conducted an independent investigation into the viability of their investment. In addition,

Plaintiffs have not alleged that they suffered injury as a result of the alleged mail fraud. They do not allege that Buffalo's, Inc. was not entitled to the franchise fees. Therefore, they cannot show that their damages flow from the predicate acts. "A plaintiff cannot allege merely that an act of racketeering occurred and that he lost money. He must show a causal connection between his injury and a predicate act." *Pelletier,* 921 F.2d at 1498–99. Plaintiffs make additional allegations that Defendants "siphon[ed] off money" from an advertising fund. [Doc. 8, ¶ 94]. Despite the fraud-like wording, the claim essentially alleges that Defendants used these advertising funds for purposes outside those provided by the contract. These matters are governed by the express terms of the franchise agreements. [Doc. 21, Exh. 1, ¶ 5.C (regarding local advertising plan and expenditures) ]. The allegation does not state a RICO violation. Plaintiffs also claim that Defendants engaged in anti-competitive conduct. Irrespective of the validity of this allegation, anti-competitive conduct does not constitute a predicate act under the RICO statute. *See* 18 U.S.C. § 1961(1) (list of predicate acts does not include antitrust violations); *Jennings v. Emry,* 910 F.2d 1434, 1438 (7th Cir.1990) (violation of antitrust laws is not a predicate act under RICO). In their response, Plaintiffs do not dispute that anti-competitive conduct is not a predicate act. [Doc. 25, pp. 18–19].

Plaintiffs' allegations reveal the contractual essence of their dispute. The Court declines Plaintiffs' invitation to turn a contract dispute between sophisticated businessmen into a racketeering claim. The RICO statute was not designed to provide the extraordinary remedy of treble damages to a garden-variety contract dispute; nor did Congress intend to federalize every tort or breach of contract in business transactions involving the use of the mails. *Doxie v. Ford Motor Credit Co.,* 603 F.Supp. 624, 628 (S.D.Ga.1984). The mail fraud statute does not forbid all business practices that fail to fulfill expectations. *United States v. Kreimer,* 609 F.2d 126, 128 (5th Cir.1980). Plaintiffs' remedy, if any, lies in an action for breach of contract. Plaintiffs have not alleged a claim for which relief can be granted as to a RICO violation. Accordingly, Plaintiffs' federal RICO claims in Counts V and VI and Georgia RICO claims in Counts IX and X should be dismissed. Because Plaintiffs have failed to allege a "scheme to defraud," the Court does not address Defendants alternative arguments on proximate cause and intra-corporate conspiracy.

## C. ANTITRUST VIOLATIONS

Plaintiffs allege three antitrust claims in Counts II, III and IV. Counts II and III allege an unlawful group boycott and Count IV alleges vertical price fixing. Plaintiffs' group boycott claims allege violations of Section One of the Sherman Act by Defendants against two of their distributors, City Provisions Company, Inc. ("City Provisions") and Sysco Food Services of Atlanta ("Sysco"). Plaintiffs allege that these distributors acted as their agents in soliciting bids from Buffalo's, Inc.'s suppliers. Plaintiffs allege that Buffalo's, Inc. forced its suppliers into an unlawful agreement not to provide competitive bids to City Provisions and Sysco.

Defendants contend that Plaintiffs lack standing to bring this antitrust action. Specifically, Defendants say Plaintiffs have not suffered an antitrust injury from the alleged boycott of City Provisions and Sysco. Standing is a question of law. *Austin v. Blue Cross & Blue Shield,* 903 F.2d 1385, 1387 (11th Cir.1990). In the antitrust context, standing is a far more complex matter than the usual search for the constitutionally mandated injury in fact. Antitrust standing involves a more comprehensive inquiry, turning on "an analysis of prudential considerations aimed at preserving the effective enforcement of the antitrust laws." *Todorov v. DCH Healthcare Auth.,* 921 F.2d 1438, 1448 (11th Cir. 1991) (denying antitrust standing to physician seeking hospital privileges so as to reap the alleged monopoly profits received

by staff radiologists). The analysis requires a court to "evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Associated Gen. Contractors of Calif., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 535, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Ultimately, the Court must determine whether the alleged injury derives from some form of anti-competitive conduct and is the kind of injury that Congress intended to redress with treble damages.

In *Todorov*, a leading Eleventh Circuit case on standing, the court set forth a two-pronged approach to determine whether a plaintiff is a proper party to bring an antitrust suit: (1) the plaintiff must suffer an "antitrust injury," and (2) plaintiff must be an "efficient enforcer" of the antitrust laws. *Todorov*, 921 F.2d at 1449. An antitrust injury results from anti-competitive conduct. "The antitrust injury concept...requires the private antitrust plaintiff to show that his own injury coincides with the public detriment tending to result from the alleged violation. This requirement increases the likelihood that public and private enforcement of the antitrust laws will further the same goal of increased competition." *Austin*, 903 F.2d at 1389–90. (citation omitted).

■ In general, Plaintiffs have failed to allege any facts which might show that they themselves suffered an injury by virtue of Defendants' alleged anticompetitive conduct. The alleged group boycott was directed at City Provisions and Sysco, not Plaintiffs. Antitrust standing does not exist for one "who has merely suffered indirect, secondary, or remote injury." *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 710 (11th Cir.1984) (*per curiam*). Cases in which "pass-through" purchasers have been recognized as having antitrust standing involve indirect purchasers who have some degree of control over the direct purchaser. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 n. 16, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) (noting in *dicta* exception to antitrust standing

where the direct purchaser is owned or controlled by its customer); *In re Toilet Seat Antitrust Litig.*, 387 F.Supp. 1342, 1343 (J.P.M.L.1975). Plaintiffs make no such allegation here. However, construing the Complaint in favor of the Plaintiffs, some degree of control may be implied from the allegation that the distributors did in fact act as the franchisees' agent in soliciting bids from Defendants' suppliers. If in fact this is not true, and there was nothing more than the typical distributor-customer relationship, this is more appropriately dealt with by a motion for summary judgment (or Rule 11) rather than a motion to dismiss.

■ In Count IV, Plaintiffs allege that Defendants violated the Sherman Act through vertical price fixing. Vertical price fixing is a *per se* violation of Section One of the Sherman Act. *See Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 760, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). The paradigmatic vertical price fixing scheme involves a supplier coercing a purchaser to charge a certain price upon resale to consumers. However, "[t]he crux of any price-fixing agreement is the relinquishment by a trader...of the freedom to set prices in accordance with his own judgment." *AAA Liquors, Inc. v. Joseph E. Seagram and Sons, Inc.*, 705 F.2d 1203, 1205 (10th Cir.1982). Not every violation fits that mold. *See Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) (finding that promulgation of minimum fee schedule by county bar association—an entity that did not compete in the provision of legal services, but played a role in fixing those fees—constituted price-fixing scheme prohibited by Sherman Act). A price maintenance arrangement that produces the same effects as a traditional resale price-fixing scheme likewise deserves *per se* treatment. *Id.; DeLong Equip. Co. v. Washington Mills Electro Minerals Corp.*, 990 F.2d 1186, 1200 (11th Cir.1993) (finding that wholesale price manipulation could consti-

tute *per se* violation when such manipulation effectively set retail prices as well).

■ Here, Plaintiffs allege that Defendants have coerced their approved suppliers into maintaining specified price levels in violation of the Sherman Act. [Doc. 8, ¶¶ 78–91]. To qualify for *per se* treatment, Plaintiffs need only show that Defendants intended to fix prices charged by suppliers at lower levels in the distribution system. *See Bender v. Southland Corp.*, 749 F.2d 1205, 1212 (6th Cir.1984). While Defendants' licensing regime might not qualify as a retail resale system, it constitutes a "distribution system" for purposes of the Court's analysis. The form of the distribution system matters less than the loss of dealer autonomy in setting independent prices. If proven, Plaintiffs' allegations that Defendants have established minimum prices for lower level dealers in the distribution system would constitute a *per se* violation of the Sherman Act. Accordingly, Defendants' Motion to Dismiss should be denied as to Count IV of the Complaint.

### D. CONVERSION & BREACH OF FIDUCIARY DUTY

■ Finally, Defendants move this Court to dismiss Plaintiffs' claims in Count XV. In this count, Plaintiffs mix allegations of conversion and breach of fiduciary duty. Specifically, Plaintiffs allege a confidential relationship existed between Buffalo's, Inc. and its franchisees, including the corporate plaintiffs, with regard to the administration of the advertising fund. Plaintiffs allege that Defendants converted some or all of the money held in trust for Defendants' own use and benefit, in breach of its fiduciary obligations. As with many of their claims, Plaintiffs' allegations fail by virtue of their contractual agreement. The franchise agreement provides that "this Agreement does not establish a fiduciary relationship between [the parties]." [Doc. 19, Exh. 1, § 21.A]. Under Georgia law, a franchisor does not generally owe a fiduciary duty to its franchisees. *See Allen v. Hub Cap Heaven, Inc.*, 225 Ga.App. 533, 536, 484 S.E.2d 259 (1997); *Capital Ford*

*Truck Sales, Inc. v. Ford Motor Co.*, 819 F.Supp. 1555, 1579 (N.D.Ga.1992) (collecting cases that find no fiduciary relationship between franchisor and franchisee). Accordingly, Defendants are entitled to have the breach of fiduciary duty claim in Count XV dismissed.

■ Plaintiffs also assert a claim for conversion. Both parties fail to address the conversion claim in their briefs. Nevertheless, the Court will briefly address it. "Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *Adler v. Hertling*, 215 Ga.App. 769, 772, 451 S.E.2d 91 (1994). Plaintiffs allege that Defendants used funds from the advertising fund for purposes outside of those authorized by the franchise agreements. Under O.C.G.A. § 51–10–1, "[t]he owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." For Plaintiffs to make a *prima facie* case in conversion, they must show (1) proof of title to the property in the Plaintiffs, (2) right of possession in the Plaintiffs, (3) possession in the Defendants, (4) demand for possession, (5) refusal to surrender, and (6) value of the property. *College Park v. Sheraton Savannah Corp.*, 235 Ga.App. 561, 509 S.E.2d 371, 374 (1998). Plaintiffs have failed to allege a demand for the possession of the allegedly misappropriated funds, a refusal to surrender, or the value of the funds taken. Accordingly, Defendants are entitled to a dismissal of Plaintiffs' conversion claim.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the First Amended Complaint [Doc. 19] is hereby DENIED as to the antitrust claims in Count IV. As to all other claims for which Defen-

dants have moved to be dismissed, the motion is hereby GRANTED.