[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
John J. Keane ("Plaintiff") filed the underlying verified complaint requesting equitable relief, namely the imposition of a constructive trust and the declaration of his entitlement to a one-half ownership interest in property currently held by Margaret E. Mulligan and Donald Mulligan and their sons, Brad and Bryan Mulligan (collectively "Defendants") as tenants in common.[1] Due to the equitable nature of the relief requested, this matter is before the Court for decision following a non-jury trial. Jurisdiction is pursuant to G.L. (1956) §8-2-13.
 Facts and Travel
Comedian George Burns once said "happiness is having a large, loving, caring, close-knit family in another city." In an attempt to belie this wisdom, John J. Keane, Sr. ("Keane Sr.") desired to construct a family compound to keep his family in close proximity. Keane Sr. and his wife Margaret Keane had two children — the Plaintiff and Margaret Keane Mulligan ("Peggy Mulligan"). To effectuate his plan, Keane Sr. purchased an unimproved parcel of land located at 1265 Ives Road otherwise identified as Assessor's Plat 209, Lot 9 in the City of Warwick, Rhode Island ("Ives Property"). He originally planned to build three dwellings to house (1) Keane Sr. and his wife Margaret Keane; (2) Peggy Mulligan and her husband Donald Mulligan; and (3) the Plaintiff and his first wife, Ellen.
According to the City of Warwick Land Evidence Records — Book 460, Page 166 — Keane Sr. purchased the Ives Property for $30,000 and took title in his name only. In 1980, Keane Sr. added Margaret Keane's name to the deed, and the two owned the Ives Property as joint tenants. From the testimony presented, the terms of the monetary agreement provided that Keane Sr. would furnish the necessary funds for purchase of the land and construction of the three dwellings. Thereafter, the children would each reimburse Keane Sr. for their respective one-third share and participate in the construction. Each child was to also pay one-third of the ongoing joint expenses such as real estate taxes and water bills.
In 1975, Donald and Peggy Mulligan purportedly paid Keane Sr. $35,000 — proceeds from a savings account and the sale of their Cranston home located at 53 Holland Drive. In addition, Peggy made periodic payments to her father to satisfy the debt incurred from the construction of Log II. According to Peggy, she fully satisfied her financial obligation to Keane Sr. in December 1980.
The Plaintiff claims that he paid Keane Sr. $10,000 to account for his share of the land purchase; however, no explicit documentary evidence exists to support his claim. The Plaintiff also alleges that he satisfied a portion of the debt owed to Keane Sr. by transferring his interest in a separate piece of property identified as Assessor's Plat 121, Lots 127 and 128 in the City of Warwick. The Plaintiff avers that he and his first wife purchased this Burt Street property in 1971 for $19,500. They received a $5,000 gift from Keane Sr. and executed a mortgage for $14,500. As evidenced by Book 412 Page 867 of the Land Evidence Records, the Plaintiff and his first wife took title to the referenced property on March 2, 1971. Confronting the prospect of an imminent divorce, the Plaintiff and strangely, his wife conveyed the property to Keane Sr. and Margaret Keane on March 26, 1971. Plaintiff claims to have made improvements to this property — new roof, new downstairs levette, painting and wallpapering, garage repairs — at his own expense and further alleges that he made mortgage payments on the property during the time he and or his first wife and children resided in the property. According to the Defendant Peggy Mulligan, after Plaintiff's family vacated the Burt Street property it was substantially renovated — new kitchen, added bath, renovated old bath, new carpeting throughout — with the goal of increasing its market value — renovations she claims her father financed. Peggy acknowledges that Plaintiff contributed his labor to this effort but insists that two workers paid for by Keane Sr. did the bulk of the labor. It appears that Peggy, too, lived in this Burt Street house with her family from April to October, 1975. During her family's stay Keane Sr. paid the mortgage while she and Donald paid all other property expenses. After Peggy's departure from Burt Street, Keane Sr. and Margaret lived there paying all expenses until it was sold in April of 1976 for $36,000. The mortgage balance at the time of sale was approximately $12,000.
Construction of three dwellings commenced after Keane Sr. took title to the Ives Property. Plaintiff alleges that he made substantial contributions to the clearing and grading of the land and also to the construction of the three houses. Further, the evidence indicates that Keane Sr. hired Atlas Cement Company to lay the house foundations and an electrician to install the wiring. Friends and family members including Plaintiff and Donald Mulligan contributed time, labor, and materials to the endeavor. James H. Doorely, the owner of Fanning and Doorley Construction, testified via deposition that he furnished materials and worked 2-3 days per week on the compound. Al Campbell, a family friend, and four laborers from Fanning and Doorley also helped with the construction. Following the completion of construction, the Plaintiff and Al Campbell moved into Log I in August, 1975; Peggy and Donald Mulligan moved into Log II in October, 1975; and Keane Sr. and Margaret Keane moved into Log III in August, 1976.[2]
Shortly after his dream began to take shape, Keane Sr. encountered problems with both his health and his relationship with the Plaintiff. In July 1978, he suffered a massive coronary which effectively ended his twenty-five (25) year career as a superintendent with the Fanning and Doorley Construction Company. Subsequent to his heart attack, Keane Sr. and the Plaintiff had a falling out. Around 1980 Plaintiff contends he asked his father to add his name to the Ives Property asserting that he had paid his fair share for the property and expenses in accordance with their agreement. He contends that he asked his father to make this conveyance on several prior occasions between 1975 and 1980. Keane Sr. adamantly refused this request stating, according to Plaintiff, that he wanted his name solely to remain on the deed. Angered by this confrontation, Plaintiff says he became estranged from his parents for five or six months, refusing to contribute any money during that time for the calculated expenses of $80 per week, an amount plaintiff claims to have regularly paid before that incident. Plaintiff insists he resumed payments after that short hiatus.
Peggy Mulligan, who claims to have been present during this volatile confrontation, remembers the incident differently. According to Mulligan, in the late 1970's the Plaintiff asked Keane Sr. to give him sole ownership of Log I. Keane Sr. refused. A couple of days later, a certified letter arrived from Plaintiff which sent Margaret Keane into tears. An upset Keane Sr. immediately summonsed Plaintiff to Log III and upon his arrival, "all hell broke out" according to Peggy. Father and son loudly cursed one another. Keane Sr. accused Plaintiff of owing him thousands of dollars including money not paid for his share of the land. Suggesting to his father that he go f____ himself, Plaintiff, according to Peggy, vowed that he would not pay his father another nickle. Keane Sr. declared that he would begin to charge Plaintiff interest on his debt at prime rate. The scene which Peggy describes as "beyond ugly" resulted in an estrangement between Plaintiff and his father which she asserts, lasted until Keane Sr.'s death. Peggy also contends that after the falling out, Plaintiff paid nothing towards the common expenses for several years. It was only after being summonsed a second time three or four years later that Keane Sr. told Plaintiff in no uncertain terms that he would either pay $80.00 per week "rent" or get out. Consequently, in 1982 or 83, Peggy asserts that Plaintiff began paying $80 per week to continue residing in Log I.
In March 1984, Keane Sr. suffered a stroke. As a result of Keane Sr.'s medical condition, Peggy Mulligan left her employment as a registered nurse at Rhode Island Hospital in order to care for her father full time. In 1986, Keane Sr.'s rapidly deteriorating health necessitated his admission to the Coventry Health Center nursing home. At that point, Peggy Mulligan and her family moved into Log III with Margaret Keane in order to further assist her mother and to reduce the family expenses. Log II then became rental property. The joint living arrangement persisted until Margaret's death.
In June 1986, Keane Sr. and Margaret Keane conveyed the Ives Property to Peggy Mulligan. A family friend, Attorney Louis Valone, prepared the deed of transfer. Peggy maintains that she never discussed the transfer with her parents before hand, nor did she ever ask her parents to gift her the property. Peggy Mulligan denies any specific knowledge as to why her parents gave her the property or why they did not give Plaintiff some or all of the property, but testified that Keane Sr.'s desire to obtain Medicaid assistance may have prompted the conveyance to her. By removing his name from the deed, Keane Sr. reduced the value of his assets. In 1989, he qualified for Medicaid assistance for the cost of nursing home care — cost he paid from personal savings for two years. In November 1991, Keane Sr. died intestate owning no property at the time of his death. Peggy Mulligan maintains that she has paid all applicable taxes and expenses on the Ives Property since the time of the conveyance.
At the time Keane Sr. and Margaret Keane conveyed the Ives Property to Peggy Mulligan, the Plaintiff was in the process of divorcing his second wife, Donna Piscopio. The Plaintiff's second divorce became final on January 29, 1987. The Plaintiff cites his pending divorce settlement as the reason Keane Sr. did not place his name on the Ives Property deed. Keane Sr., Plaintiff speculates, did not want Ms. Piscopio to have any claim of title to the Ives Property. Nonetheless, in the divorce decree, the Plaintiff was ordered to reimburse his wife $7,000 for money she expended on improvements to Log I. According to Plaintiff, Margaret Keane loaned him $5000 of the $7000 needed for the reimbursement, an amount he says he repaid. Also of note, Plaintiff admits that he did not list any ownership interest in the Ives Property on his Family Court assets and liability form, a document which is sworn to under oath when filed with the Court.
Two years after his second divorce, the Plaintiff married his third wife, Marion Cole and she became an Ives Road resident. In 1994, the Plaintiff and Marion Cole moved from Log I to Log II, a larger residence, to accommodate Marion's father who had since come to live with them. In August of 1994, Plaintiff's payments increased from $80 per week to $550 per month, an amount for housing which has not increased since that time.
In June 1996, Margaret Keane was diagnosed with cancer, and she died intestate in August 1996. At the time of her death, Peggy Mulligan divided the remaining balance of her bank accounts — $26,000 — between herself and the Plaintiff. Peggy Mulligan kept certain sentimental pieces of jewelry and transferred any remaining stocks to her son, Bryan Mulligan.
In 2000, the Plaintiff and Marion Cole filed for bankruptcy. Records indicate that their combined debt exceeded $50,000. The records also indicate that Plaintiff attested that he had no interest in any real property.
On May 7, 2002, Peggy Mulligan executed an $180,000 mortgage on the Ives Property and added her sons, Bryan and Brad Mulligan, to the deed. The Plaintiff claims that Peggy Mulligan took these actions without his consent or knowledge. After a disagreement between the Plaintiff and one of Peggy's sons, the strained relationship between brother and sister came to a head. On August 15, 2002, the Plaintiff received an eviction notice signed by Peggy Mulligan and Brad Mulligan.
Shortly after receiving the eviction notice, the Plaintiff filed the underlying complaint on September 30, 2002. The Plaintiff requests the imposition of a constructive trust. In support of his request, the Plaintiff cites three factors — pooling of purchasing capital, sharing of labor costs, and the resulting unjust enrichment to Peggy Mulligan. Next, the Plaintiff seeks a declaratory judgment that he is the owner in fee simple of an undivided one-half interest in the Ives Property. In accordance with his requested declaratory judgment, he asks the Court to reform the mortgage to allow Peggy Mulligan to encumber only one-half of the Ives Property. Relatedly, he seeks reimbursement of one-half of any and all proceeds from both rental income and the mortgage. Finally, he asks the Court to partition the Ives Property and authorize an accounting and subsequent sale of the Ives Property to reimburse the Plaintiff for all costs. Alternatively, the Plaintiff advances an almost identical argument for the imposition of a resulting trust.
In their answer to the Plaintiff's verified complaint, the Defendants raised three affirmative defenses — laches, statute of limitations, and statute of frauds. The Defendants claim that they own the Ives Property in fee simple, and the Plaintiff is a tenant at sufferance.
After filing the complaint, the Plaintiff sought injunctive relief. On September 30, 2002, Judge Pfeiffer granted the Plaintiff's request for a temporary restraining order prohibiting any further encumbrance or alienation of the Ives Property pending resolution of the instant controversy. On October 9, 2002, Judge Pfeiffer granted a similar request which prohibited the Defendants from commencing eviction proceedings against the Plaintiff.
 Standard of Review
"In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon. . . ." R.I. Super. R. Civ. P. 52(a). In a non-jury trial, "the trial justice sits as a trier of fact as well as of law." Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). "The task of determining credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." Bogosian v. Bederman, 823 A.2d 1117, 1120 (R.I. 2003) (citing Walton v. Baird, 433 A.2d 963, 964 (R.I. 1981)). "Consequently, she weighs and considers the evidence, passes upon the credibility of witnesses, and draws proper inferences."Bissonnette v. Ventura, 2004 R.I. Super. LEXIS 202, 3-4 (2004).
Typically, the Statute of Frauds requires that contracts for the conveyance of real property be in writing. Pursuant to G.L. (1956) § 9-1-4,
"No action shall be brought:
 (1) Whereby to charge any person upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer time than one year;
. . .
 unless the promise or agreement upon which the action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him or her thereunto lawfully authorized.
"The purpose of the statute was to prevent perjured testimony with respect to oral contracts. Id. Rhode Island's statute of frauds also is to guard against perjury by one claiming under an alleged agreement." Smith v. Boyd, 553 A.2d 131, 132 (R.I. 1989).
The circumstances of the instant case underscore the rationale behind the statute of frauds. First, the controversy is based on a real estate transaction which occurred over thirty years ago. Second, the Plaintiff lacks any written documentation of the terms of the original agreement regarding ownership rights or payment obligations. Third, Keane Sr. and Margaret Keane are now deceased; therefore, the Court lacks critical testimony from essential parties. In the absence of a valid writing, the Court is forced to piece the puzzle together with key sections missing. Consequently, the Court must rely on the limited documentary evidence, deposition testimony, and witness testimony offered during the course of the non-jury trial.
 Constructive Trusts
"Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." Restatement of Restitution § 160 (1937). See also J.K. Social Club v. J.K. Realty Corp.,448 A.2d 130, 134 (R.I. 1982); Desnoyers v. Metropolitan LifeInsurance Co., 108 R.I. 100, 272 A.2d 683 (1971).
"A constructive trust is an equitable remedy that a court may impose upon the parties, in the absence of their actual intent to create a trust, in order to avoid the unjust enrichment of one party at the expense of another." J.K. Social Club,448 A.2d at 134. "The underlying principle of a constructive trust is the equitable prevention of unjust enrichment of one party at the expense of another in situations in which legal title to property was obtained by fraud or in violation of a fiduciary or confidential relationship." Renaud v. Ewart, 712 A.2d 884, 885
(R.I. 1998) (citing Simpson v. Dailey, 496 A.2d 126, 128 (R.I. 1985)).
A plaintiff's burden to establish a constructive trust is well settled. To establish the propriety of the imposition of a constructive trust, a plaintiff has the burden to establish by clear and convincing evidence (1) the existence of a fiduciary relationship between the parties; and (2) either a breach of some promise or a fraudulent act that occurred as a product of this confidential association. See Connor v. Sullivan,826 A.2d 953, 960 (R.I. 2003); Bourque v. Goodwin, 771 A.2d 900, 901
(R.I., 2001); Clark v. Bowler, 623 A.2d 27, 30 (R.I. 1993);Simpson, 496 A.2d at 128-29; Cahill v. Antonelli,120 R.I. 879, 882-83, 390 A.2d 936, 938 (1978).
"With respect to real property there must be some element of fraudulent conduct by the person in possession of the property in procuring the conveyance in order for a constructive trust to arise." Curato v. Brain, 715 A.2d 631, 634 (R.I. 1998). "For fraud to lead to the creation of a constructive trust, the evidence must show that the holder of legal title procured title through fraud. There must be an actual misrepresentation of present intent." J.K. Social Club, 448 A.2d at 134.
Although only Keane Sr.'s name appeared on the deed, the Plaintiff argues that Keane Sr. held the Ives Property in trust for his two children. As such, the Plaintiff suggests that Keane Sr. breached the fiduciary relationship between himself and the Plaintiff by conveying the Ives Property in its entirety to Peggy Mulligan. Accordingly, the Plaintiff argues that Peggy Mulligan has been unjustly enriched by the conveyance of the Ives Property.
The Defendants posit that numerous factors motivated Keane Sr. to transfer the Ives Property solely to Peggy Mulligan: (1) strained relations between Keane Sr. and the Plaintiff; (2) the Plaintiff's failure to timely satisfy his debt for purchase of the land and construction of his dwelling; (3) Peggy Mulligan's full-time care of her parents during their health problems. Further, the Defendants argue that the Plaintiff has failed to demonstrate by clear and convincing evidence either the existence of a fiduciary relationship or any fraudulent activity used by the Defendants to facilitate the transfer of the Ives Property.
In order to resolve the underlying controversy, the Court must determine whether a fiduciary relationship existed between the Plaintiff and Keane Sr. If so, the Court must then address whether either a breach of a fiduciary promise or a fraudulent act caused Keane Sr. to convey the Ives Property to Peggy Mulligan to the exclusion of the Plaintiff.
 Fiduciary Relationship
A fiduciary relationship is defined as "a relationship in which one person is under a duty to act for the benefit of another on matters within the scope of the relationship." Black's LawDictionary 1315 (Bryan A. Garner ed., 8th ed., West 1999). "There are no hard and fast rules about when a confidential relationship will be found. The court may consider a variety of factors, including the reliance of one party upon the other, the relationship of the parties prior to the incidents complained of, the relative business capacities or lack thereof between the parties, and the readiness of one party to follow the other's guidance in complicated transactions." Simpson,496 A.2d at 129. "A family relationship, of itself, does not create a fiduciary relationship although further facts may show one."Id. at 128. "While the relationship between father and son is not necessarily confidential, less evidence is necessary to establish a confidential relationship between a parent and child than between strangers in blood." Tyler v. Tyler, 54 R.I. 254,255, 172 A. 820, 821 (1934).
The Court will begin the analysis by reviewing the circumstances surrounding the purchase of the Ives Property in 1974. Keane Sr. desired to build a family compound. To achieve this desired end, Keane Sr. agreed to front the money for the purchase of the land and the construction of the three dwellings. When he purchased the Ives Property, Keane Sr. had two separate and distinct oral agreements regarding the purchase and development of the Ives Property with (1) the Plaintiff; and (2) Peggy and Donald Mulligan. From the evidence presented, the Court infers that the terms of that agreement appear were relatively straightforward — the Plaintiff and Peggy Mulligan each had to repay Keane Sr. one-third of the applicable costs to obtain an ownership interest in the Ives Property.
The deterioration of the relationship between Keane Sr. and the Plaintiff caused the terms of that agreement to change. The Court finds that the evidence and testimony presented corroborate Peggy Mulligan's assertion that the Plaintiff failed to honor his financial obligations to Keane Sr. with respect to payment for the Ives Property. Although the Plaintiff directs the Court's attention to a transfer of property on Burt Street in Warwick to Keane Sr., there is no documentary evidence to clarify the terms of this transfer. A deed presented to the Court shows that the Plaintiff took title to this Warwick property on March 2, 1971. The Plaintiff concedes that he accepted a $5,000 gift from Keane Sr. and executed a $14,500 mortgage to finance the purchase. Nevertheless, a subsequent deed demonstrates that the Plaintiff transferred the Warwick property to Keane Sr. less than one month later. Although the Plaintiff may have financed some of the improvements to the property, it is also clear from the evidence that Keane Sr. also financed significant improvements thereto. Moreover, Defendants Peggy and Donald Mulligan as well as Keane Sr. and Margaret Keane also lived in this home at some point, all paying mortgage and upkeep expenses during their tenure therein. Accordingly, it is impossible for the Court to conclude that the Plaintiff alone was entitled to receive credit for any equity which may have accrued by the time of the sale.
With respect to the blow up between father and son which all acknowledge resulted in some period of estrangement, the Court finds it more believable that it lasted years, not months, By his own admission Plaintiff states that he never visited his father at the nursing home more than once a month at best. Contrast that to Peggy Mulligan's daily visits with her father. Thus, it is more probable that Plaintiff did fail to pay his father for over four years and that Keane Sr. determined Plaintiff had exhausted any `sweat equity' earned from his contribution to construction of the three dwellings. Consequently, Keane Sr. effectively terminated any ownership interest that the Plaintiff could have acquired had Plaintiff made timely payments.
From the Court's perspective, Keane Sr. made the terms of the relationship fairly certain when he required his son to pay rent to live on the Ives Property. Thompson defines rent as "a payment that the tenant is obligated by contract to make to the landlord for use of the leased premises." 5 Thompson on Real Property, § 40.03(a) Thomas Edition (David A. Thomas 1994). In the absence of a written agreement to the contrary, the payment of rent does not confer an ownership interest in the premises. Despite the Plaintiff's assertion that he has `paid taxes' on the Ives Property to the City of Warwick, that assertion is also unsupported by any evidence in the record other than Plaintiff's uncorroborated testimony. Conversely, the Court has copies of cancelled checks made out to "Cash," endorsed by either Margaret or Donald Mulligan, dated around the 14th or 15th of every month suggesting rental payments. In addition, Peggy and Donald Mulligan treated these payments as rental income on their personal income taxes. Given these undisputed facts, the Court finds no persuasive evidence to support the characterization of these payments as anything other than rent paid by the Plaintiff to Peggy and Donald Mulligan for the use of the leased premises. While the cumulative value of these payments may be substantial, the Plaintiff has acquired no ownership interest in the Ives Property through the payment of rent.
In the absence of any evidence to the contrary, the Court cannot see how a fiduciary relationship could be inferred from the circumstances of the case at bar. Familial association is the only evidence before the Court which even hints as to the existence of a fiduciary relationship between Keane Sr. and the Plaintiff. The Plaintiff has failed to present any credible evidence that he relied on Keane Sr.'s advice or business savvy. Even assuming a fiduciary relationship existed at the time Keane Sr. purchased the land, any remnant of that relationship terminated when Keane Sr. required Plaintiff to pay rent.
Furthermore, the only documentary evidence before the Court regarding the conveyance of Ives Property militates against the relief requested by the Plaintiff. Specifically, the 1986 deed definitively shows that Keane Sr. and Margaret Keane transferred ownership of the Ives Property to Peggy Mulligan. Although the Plaintiff argues that he was excluded from this transfer because he was in the throes of a divorce from his second wife, again there is no clear and convincing evidence to support this assertion. Additionally, the divorce decree from the Plaintiff's second divorce became final in January 1987; however, he provided no explanation as to his inaction in remedying the alleged omission in the time that elapsed between 1987 and 2002.
Even assuming it found the scenario painted by the Plaintiff plausible, the Court would be troubled by this explanation for one very obvious reason. If the Plaintiff had an ownership interest in the Ives Property, he deliberately attempted to evade the laws of the State of Rhode Island regarding equitable distribution of marital assets by omitting this asset from the 1987 property settlement. The same problem arises with respect to the Plaintiff's bankruptcy proceedings in 2000. In the documentation provided from these bankruptcy proceedings, the Plaintiff failed to list any ownership interest in the Ives Property as an asset. By failing to list this valuable asset if Plaintiff indeed believed himself to be the owner, the Plaintiff effectively defrauded creditors. The Court cannot condone such selective ownership which the Plaintiff randomly invokes based on his present financial or personal circumstance.
Without the aid of testimony from either Keane Sr. or Margaret Keane, the Court must rely on the deposition testimony and testimony presented by witnesses during the course of the non-jury trial, as well as the documentary evidence in the record. The cumulative effect of these sources has provided little evidence on which to predicate the imposition of a constructive trust.
 Breach of Promise or Fraudulent Act
Even if the Plaintiff had established by clear and convincing evidence the existence of a fiduciary duty, the Plaintiff has nonetheless failed to demonstrate that Peggy Mulligan either failed to pay consideration for the conveyance or took title to the Ives Property with knowledge of the alleged violation of that duty.
"Where a fiduciary in violation of his duty to the beneficiary transfers to a third person property entrusted to him as fiduciary, the third person holds the property upon a constructive trust unless he is a bona fide purchaser. . . . The third person holds the property upon a constructive trust for the fiduciary if he received the transfer with notice that the fiduciary was violating his duty in making the transfer, or even though he had no notice if he did not give value. On the other hand, the third person is under no liability if he receives the transfer for value and without notice of the violation of duty. . . ." Restatement of Restitution, supra, at § 201 cmt. a.
Although the Plaintiff contends that Peggy Mulligan provided no consideration in exchange for the conveyance for the Ives Property, such an allegation is misguided. First, the Court is persuaded that Peggy and Donald Mulligan fully satisfied their financial obligation to Keane Sr. for both the purchase and development of the Ives Property in December 1980. Second, Peggy left her employment as a registered nurse and provided full-time care for her parents during their respective times of need. Third, Margaret Keane lived with Peggy and her family for many years. Given these undisputed facts, the Court finds that Peggy Mulligan provided sufficient consideration to merit the conveyance of the Ives Property to her, and her alone. Furthermore, there is absolutely no evidence to suggest that Peggy employed any fraudulent activity to obtain title to the Ives Property.
Conversely, the testimonial and documentary evidence presented suggests that the Plaintiff failed to satisfy his financial obligations and made little to no effort to provide any care to his ailing father. Moreover, even though the Plaintiff lived in very close proximity to his mother, the evidence suggests that his visits to her, perhaps once a week, were less than one might reasonably expect from a caring child. Most importantly, the Plaintiff made no attempt to challenge the 1986 conveyance until 2002. At this point, both Keane Sr. and Margaret Keane are deceased and unavailable to articulate their reasons for transferring the Ives Property to their daughter alone. The Plaintiff has made no allegation that Keane Sr. was incompetent at the time of transfer. On the contrary, Plaintiff testified that his father's mind was clear and sharp to the day of his death. Accordingly, without clear and convincing evidence of a fiduciary relationship between Plaintiff and his father and a breach of a fiduciary duty or fraud by Keane Sr., it is not the province of this Court to override the seemingly valid, written, attorney-involved conveyance of the Ives Property to Peggy Mulligan.
 Resulting Trust
"A resulting trust is a reversionary, equitable interest implied by law in property that is held by a transferee, in whole or in part, as trustee for the transferor or the transferor's successors in interest." Restatement (Third) of Trusts § 7 (1992). "A constructive trust is also to be distinguished from a resulting trust. A resulting trust arises where a transfer of property is made under circumstances which raise an inference that the person making the transfer or causing it to be made did not intend the transferee to have the beneficial interest in the property transferred. A constructive trust is imposed not because of the intention of the parties but because the person holding the title to property would profit by a wrong or would be unjustly enriched." Restatement of Restitution, supra, at § 160 cmt. b.
Without the assistance of definitive evidence, a monetary contribution to the purchase of real property does not establish an entitlement to a resulting trust. See Desnoyers,108 R.I. at 111, 272 A.2d at 689. "There must be clear, full and convincing evidence that at the time of the conveyance it was the intention and understanding that the contributor was to have the beneficial ownership in the whole or in a definite fractional part." Id. (quoting Cutroneo v. Cutroneo, 81 R.I. 55, 59,98 A.2d 921, 923 (1953)).
There is a complete lack of credible evidence to suggest that Keane Sr. intended at the time of the 1986 conveyance of the Ives Property to Peggy Mulligan that the Plaintiff was to have the beneficial ownership of an undivided one-half interest. On the contrary, the Court finds the testimony of Peggy Mulligan credible in that the strained relationship between Keane Sr. and the Plaintiff resulted — at least in part — from Keane Sr.'s adamant refusal to add the Plaintiff's name to the deed. Consequently, the Court finds that the Plaintiff has failed to demonstrate an entitlement to an undivided one-half interest in the Ives Property which would necessitate the imposition of a resulting trust.
 Remaining Claims
Given the Court's conclusion that the Plaintiff has no interest — equitable or otherwise — in the Ives Property, the Court rejects the Plaintiff's request for a declaratory judgment regarding his entitlement to one-third of the Ives Property or any proceeds obtained from the mortgage or rental income. Similarly, the Court rejects the Plaintiff's derivative request for a reformation of the mortgage to reflect a limited encumbrance. Finally, the Court orders the two temporary restraining orders granted by Judge Pfeiffer on September 30, 2002 and October 9, 2002, respectively, vacated, thereby allowing the Defendants to exercise ownership and control over the Ives Property.
 Conclusion
Because the imposition of a constructive trust requires the Court to step outside the bounds of the Statute of Frauds with respect to a written conveyance of real property, the plaintiff must withstand a rigorous burden of proof. The invocation of this equitable remedy requires the Plaintiff to demonstrate by clear and convincing evidence the existence of a fiduciary relationship and a breach of that relationship or a fraudulent act. Although the Court genuinely sympathizes with the plight of the Plaintiff in the case at bar, he failed to produce any evidence which could be construed as either clear or convincing. Consequently, the Court is compelled to reject the Plaintiff's request for equitable and declaratory relief.
Counsel shall submit an appropriate order.
[1] At the initiation of this suit, the Plaintiff also named MERS/Countrywide Home Loans, Inc. as a defendant. Pursuant to a stipulated judgment entered on July 16, 2003, Judge Pfeiffer dismissed all claims and cross-claims against MERS with prejudice; however, the documents MERS provided in response to the Plaintiff's request for production were admitted into evidence.
[2] It appears from the record that the Plaintiff had divorced his first wife prior to the completion of Log I.